Ives *v.* Ashley & others.

## THERON IVES *vs.* THOMAS ASHLEY & others.

A., being one of two administrators, for the purpose of procuring a purchaser and a fair price for land belonging to the estate of their intestate, offered by them at public sale, in-fluenced B. to attend the sale and bid off the land by assuring him that he, A., would take it off his, B.'s, hands afterwards, if he, B., should not wish to keep it. B. after-wards, having received from the administrators a conveyance of the land in pursuance of the sale, and never having had any intention of keeping it, conveyed it to A. *Held,* that A. took a valid title to the land.

A purchase of land at an administrator's public sale by an agent of the administrator in his own name but on the account and for the benefit of his principal personally, is not void, but voidable at the election of the heirs of the intestate, to be made within a reasonable time.

C. bid off a lot of land at an administrator's public sale March 2, 1844. In the absence of other evidence to prove the execution and loss of a deed of the land by the administrator to him, a recital in a deed by him afterwards to D., purporting to convey the same land and describing it as "the same land which said C. bought at auction March 2, 1844, of E., administrator of F.," is inadmissible when offered in evidence as tending to prove that the land was conveyed to him by the administrator in pursuance of the sale.

PETITION FOR PARTITION. The petitioner claimed one undi vided fourth part of the premises, as one of the four heirs of

Matthew Ives, Senior.    Mrs. Elizabeth Wood, the only respondent who appeared and answered, claimed to be seised of them as sole heir of her father, Matthew Ives, Junior.

At the hearing in the superior court, before *Wilkinson*, J., the material facts appeared substantially as follows : The premises consisted of two lots, both of which belonged to the estate of Matthew Ives, Senior, deceased.  His widow, Rhoda Ives, and Matthew Ives, Junior, were administrators of his estate.  The respondent claimed title to the first lot by virtue of a deed from them to A. B. Whitman and from him to Matthew Ives, Junior. It appeared in evidence that under license from the probate court they offered this lot for sale at auction, November 8, 1843, and that it was bid off by Whitman, who testified that Matthew Ives, Junior, asked him to attend the sale and bid off the property unless it should go for a certain price, as he did not want it to go at a sacrifice, and assured him that he would take it off his hands afterwards if he (Whitman) should not wish to keep it. Whitman further testified that he never had any intention of keeping it, but that there was no arrangement to prevent him from doing so ; that it lay on his hands nearly six months, and he "did not know but Ives was going to make him take it." Evidence was then offered by the respondent and admitted, against the petitioner's objection, of a conveyance of the premises by the administrators to Whitman in pursuance of the sale, and of a subsequent conveyance of them, on March 9, 1844, by Whitman to Matthew Ives, Junior.   The exceptions reserved by the petitioner as to the admission of this evidence were waived at the argument in this court.

The second lot of land was set off as dower to Rhoda Ives, the widow of Matthew Ives, Senior, who occupied it until her death in 1865.   The respondent contended that the reversion of it was conveyed by the administrators to Lewis Chapman in March 1844, and by him to her father the same month ; and she introduced in evidence a quitclaim deed from Chapman to Matthew Ives, Junior, dated March 9, 1844, describing the released premises as the same which "said Chapman bought at auction March 2, 1844, of Matthew Ives and Rhoda Ives, administrators

of Matthew Ives;" but no deed nor any copy of a deed from the administrators to Chapman was produced. Chapman died in 1857. There was evidence tending to show that he bid off the reversion of the premises at an administrators' sale under license of the probate court, on March 2, 1844, for less than half the value set upon them by the administrators in their petition for the license, and that Matthew Ives, Junior, stated, before the sale, that he should have Chapman bid them off for him. The petitioner offered further to prove that Chapman, at the sale and just before he made a bid, stated that he was going to bid for Matthew Ives, Junior, and just after the sale and before he left the place of sale stated that he had bought them for Matthew Ives, Junior; but the judge excluded this evidence. A son of Chapman testified, in behalf of the respondent, that in 1854 or 1855 his father handed to him a paper and told him to give it to Mrs. Ives, as Mr. Ives was out of town, saying that it was a deed of the Ives place, but not saying "whom it was from." This testimony was received against the petitioner's objection, as was also similar testimony by Chapman's widow concerning her husband's conversation at that time with his son. The son further testified that he did not deliver the paper which his father handed to him, but lost it, and did not know what had become of it, although he had made thorough search therefor; and the widow further testified that she never before saw the paper; that she knew it was not the deed of the Ives place from her husband to Matthew Ives, Junior, which she had signed with her husband; that she did not know what it was, but that it was folded like a deed, and that her husband had no other real estate dealings with Matthew Ives, Junior, than about that place.

The petitioner asked the judge to rule that, 1. If the administrator procured Whitman to bid off the first lot for him, with the understanding that Whitman did not want it himself and that the administrator would take it of him, and in pursuance of this understanding Whitman did bid it off and took a deed but paid no money, and then conveyed it to the administrator the administrator acquired no title which could be set up against that of the petitioner; 2. If Whitman bid off the property under

**an** arrangement made by him with the administrator that he should do so to prevent the property being sold too low, and with the understanding that if he bid it off the administrator would take it off his hands, and a deed was made from the administrator to Whitman, and afterwards from Whitman to Matthew Ives, Junior, in pursuance of this arrangement, then no title thereby vested in Matthew Ives, Junior, which could be set up against the petitioner; 3. If Chapman bid off the reversion of the second lot at the request of the administrator and for the administrator, and took a deed of it and then reconveyed it to the administrator in pursuance of an arrangement to that effect, then the title of the administrator could not be set up as against the petitioner; 4. There was no evidence of a legal conveyance by the administrators to Chapman; 5. The fact that Chapman gave to his son a paper in the form of a deed, and told him to " carry this deed to Mrs. Ives," was not evidence from which the jury could properly find that a deed of the reversion of the second lot was ever given by the administrators to Chapman; nor the fact that Chapman gave the quitclaim deed to Matthew Ives, Junior, nor the recital in that deed that the premises were the same which " said Chapman bought at auction, March 2, 1844, of Matthew Ives and Rhoda Ives, administrators of Matthew Ives."

In relation to the first three prayers for instructions, the judge instructed the jury that " if the administrator procured Whitman or Chapman to bid off the real estate at either auction, for him, or with an understanding that he should, directly or indirectly, be the purchaser, such sale would not be valid and no title would pass to him by the subsequent deed; that the administrator had no right, directly or indirectly, to be the purchaser of property sold by himself in that capacity, and if such was the purpose or arrangement in pursuance of which either of the sales in this case was made, such sale was void and the administrator would acquire no title by the subsequent deed; but that if the administrator, in good faith, for the purpose of having the property bring a fair price and not with a view to his own benefit, directly or indirectly, as purchaser thereof, requested

Whitman or Chapman to attend the auction and bid off the estate if likely to be sold low, and as an inducement told him that he, the administrator, would take the estate off his hands, should he be dissatisfied with his purchase, or not wish to keep it, such request and statement would not vitiate the sale, provided the purchaser was under no obligation to allow the administrator to take the benefit of his purchase." The fourth prayer the judge declined to give. As to the fifth prayer, he instructed the jury that the facts therein stated were circumstances which they might take into consideration in determining the question whether a deed had been given by the administrator to Chapman as claimed by the respondent.

A verdict was returned for the respondent, and the petitioner alleged exceptions.

*H. Morris & A. L. Soule,* for the petitioner. The first three instructions requested by the petitioner were correct in principle, adapted to the state of the evidence, and should have been given. *Litchfield* v. *Cudworth,* 15 Pick. 30, 31. *Harrington* v. *Brown,* 5 Pick. 519. *Jenison* v. *Hapgood,* 7 Pick. 1. *Hayward* v. *Ellis,* 13 Pick. 276. *Blood* v. *Hayman,* 13 Met. 231. *Wyman* v. *Hooper* 2 Gray, 141. The instruction actually given overlooked a principle of law applicable to the subject, which was indicated in the petitioner's request, that whatever title passed to the administrator, Matthew Ives, Junior, by a deed under such circumstances, enured to the benefit of the heirs at law and could not be set up by him or his heirs against this petitioner in such a proceeding as this. Besides, it made no distinction between the sale to Whitman and that to Chapman. The fourth and fifth instructions requested should also have been given. The declarations of Chapman testified to by his widow and son were inadmissible. Declarations accompanying an act are admissible only when the act itself is material, and when they qualify or explain it. 1 Greenl. Ev. §§ 108, 110. *Lund* v. *Tyngsborough,* 9 Cush. 41. *Nutting* v. *Page,* 4 Gray, 584. *Brown* v. *Mooers,* 6 Gray, 452. In this case the act itself of sending a paper to Mrs. Ives was wholly immaterial. The whole force of the evidence is in the declaration that it was a

deed of the Ives place.  It does not at all eluctdate the act.
The act and declaration together, occurring many years after
the auction sale, afford no evidence that a deed of the premises
was given by the administrators to Chapman.   Nor was there
evidence of any deed from the administrators to Chapman, in
the fact of his deed to Matthew Ives, Junior, or its recitals.
Recitals in a deed are admissible evidence of the facts recited,
only against parties or privies, and the petitioner was neither
party nor privy.  1 Greenl. Ev. § 23.   *Hingham* v. *South Scit-
uate*, 7 Gray, 231.   The evidence offered by the petitioner as to
the declarations made by Chapman at the time of the auction
sale ought to have been admitted.   The purpose of that sale
was a material question in the case.   The declarations charac-
terized the act of purchase.  *Lund* v. *Tyngsborough*, 9 Cush. *ubi
supra.    Salisbury* v. *Gourgas*, 10 Met. 442.   *Nutting* v. *Page*,
*ubi supra.   Monson* v. *Palmer*, 8 Allen, 551.   The declarations
of Chapman were admissible also as being in disparagement of
any title he might acquire through the means he was then using
for the purpose.

*N. T. Leonard, M. B. Whitney & G. M. Stearns*, for the re-
spondent.   The first three prayers for instructions were properly
refused in the form requested.   The first two were founded on
an hypothesis embracing only a part of the evidence on that
point.   The instructions given embraced substantially the third
request.   The fourth request also was properly declined ; and
rightful instructions were given upon the fifth.   Evidence of the
declarations of Chapman accompanying the delivery of the deed
to his son was admissible as part of the *res gestæ*.   The deed
from Chapman to Ives was competent evidence as part of the
chain of the defendant's title.   *Sibley* v. *Leffingwell*, 8 Allen, 584.
There was evidence from which the jury might legally infer a
deed from the administrators to Chapman, in the facts that
Chapman bid off the premises, that he gave his son a paper in
the shape of and folded like a deed and said that it was a deed
of the Ives place, and told him to take that deed to Mrs. Ives,
that Mrs. Chapman knew it was not the deed of the Ives place
from her husband to Ives, and that Chapman never had any

other real estate dealings with Ives than about that place. Slight evidence of loss is sufficient to let in secondary evidence of the contents of the deed, and it is a question addressed to the discretion of the court. 1 Greenl. Ev. § 558. *Fitch* v. *Bogue,* 19 Conn. 285. Proof of the execution of a lost deed is unnecessary. *Hathaway* v. *Spooner,* 9 Pick. 25. Cruise Dig. tit. 32, *c.* 27, § 21. The recital of a deed in another deed is evidence of it, after proof of its loss. 1 Greenl. Ev. § 23, note. Cruise Dig. tit. 32, *c.* 11, § 6; *c.* 21, § 26. *Carver* v. *Jackson,* 4 Pet. 83. The petitioner is barred by Gen. Sts. *c.* 102, § 46. The petitioner cannot avoid the sale even if no deed ever passed from Ives to Chapman, inasmuch as the proceedings in the probate court were regular, and the jury have affirmed the good faith of the purchase. St. 1864, *c.* 137, § 1. Evidence of Chapman's declarations at the auction was of mere hearsay and inadmissible, and does not come within any of the exceptions to the rule excluding hearsay evidence. 1 Greenl. Ev. §§ 99, 123, 124, 127. They are not the declarations of a grantor, made while in possession of real estate, and qualifying his title. *Bartlett* v. *Delprat,* 4 Mass. 707. Nor are they part of the *res gestæ.* 1 Greenl. Ev. § 108.

CHAPMAN, J. The authorities cited by the petitioner's counsel do not sustain their position that if an administrator, who is about to sell real estate, procures a person to purchase it on his account, the sale is therefore void. The heirs may, within a reasonable time, elect to avoid it, and the purchaser is in such case regarded as a trustee; or they may allow it to stand, and in such case it is valid without any further act.

But the testimony of Whitman in this case tended to show that he bid off the property on his own account, and not as the agent of the administrator. He was influenced to do so by the assurance of the administrator that he would take it off his hands, if Whitman should desire him to do so. If an administrator gives such an assurance for the purpose of procuring a purchaser and preventing a sacrifice of the property, but leaving the purchaser at liberty to keep the property if he elects to do so, such an arrangement does not constitute an agency, nor does

Ives *v.* Ashley & others.

it necessarily contain an element of fraud, or unfaithfulness. This part of the case was properly submitted to the jury with correct instructions.

The evidence relied upon to prove a sale of the reversion to Chapman was that he bid it off at an administrator's sale on the 2d of March 1844; and that on the 9th of the same month he made a deed to Matthew Ives which described the premises and contained the following recital: "being the same land said Chapman bought at auction March 2, 1844, of Matthew Ives and Rhoda Ives, administrators of Matthew Ives." And in that year or in one of the two following years he gave a paper to his son, which he spoke of as a deed, and told his son to carry it to Mrs. Ives, the wife of Matthew Ives, her husband being then absent from home, and it was not the deed made by him on the 9th of March 1844.

But the fact that he bid off the property at auction does not tend to prove that the administrators executed a deed to him; for the execution of a deed is a separate transaction from a sale at auction; and the remark made by him to his son, even if it were admissible as part of the *res gestæ*, would not tend to prove that the paper was a deed of the administrators to him.

If there had been other evidence to prove the execution of a deed to him, and that it was lost, the recital would have been competent, even against strangers, as secondary evidence to prove the contents of the lost deed. This point is fully discussed in *Carver* v. *Jackson*, 4 Pet. 83. See also Cruise Dig. tit. 32, *c.* 21, § 26; 1 Greenl. Ev. § 23, note. But there being no evidence to prove the execution and loss of a deed, the recital was inadmissible; and therefore there is no evidence of a conveyance to Chapman. The exceptions are overruled as to the land sold to Whitman, and sustained as to the other tract, and the verdict should be set aside as to the latter tract only.