*N. D. Pratt*, for the defendant.
*C. S. Lilley*, for the plaintiff.

―――――――――

CHARLES LEIGHTON & another, assignees, *vs.* CHARLES F. MORRILL & others.

Essex.　March 23, 24, 1893. — June 8, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Equity — Mortgage in Fraud of Insolvent Law — Mortgage not in usual Course of Business — Preference — Findings of Master — Presumptions of Fact — Costs.*

On a bill in equity, brought by the assignees of H., an insolvent debtor, against M., to set aside a mortgage given to him by H. as a fraud on the insolvent law, it appeared that H. applied to M. for a loan of $6,000, and that a portion of this sum was paid to H. at once, for which he executed a bill of parcels, afterwards exchanged for a bill of sale of his fixtures, and a part of his stock in trade. M. put his hand on the articles, saying that he took possession of them, and told

H. that he left them with him as his agent or bailee. A month later, after M. had examined H.'s stock, and a full schedule had been made out, and M. had satisfied himself that H. was doing a profitable business, a mortgage of the greater part of H.'s goods was made for $6,000. M. redelivered the goods covered by the bill of sale, paid to H. a further sum in cash, and agreed to give him the balance of the $6,000 in goods which H. purchased from M. in the line of his trade. The mortgage was executed without haste or secrecy, and with the knowledge and approval of at least two of H.'s principal creditors, who were not friendly to or co-operating with M., and H. stated to M., to whom the fact that H.'s property was insufficient to pay his debts was not known, that the amount advanced would enable him to pay his debts and go on. For more than a month afterwards H. did go on with his business, and then, upon M.'s discovery that the conditions of the mortgage had been broken, and that probably a fraud had been practised upon him, H. absconded. There was no evidence beyond the fact of his absconding, and the state of his assets, that he kept any property from his assignees, and the indications were that he carried nothing away with him, and that he spent all that he got in paying debts, and in the regular course of his business. *Held,* that it was impossible to discover any intention of M. to give a preference in this transaction, and that such an intention was disproved by the fact that neither party doubted that the bill of sale given for the money first advanced, whether a sale or a mortgage, was valid.

The proposition that if a mortgage is given on the mortgagor's whole stock in trade, at his only place of business, not merely warrants a finding, but, as matter of law, raises a *prima facie* presumption, that the mortgage is not given in the usual course of business, and that the mortgagee has reasonable cause to believe that a fraud on the insolvent law is intended, was *held* to narrow too much the function of the master as a judge of fact.

Presumptions of fact generally are questions of fact, and are merely the major premises of those inferences which juries are at liberty to draw, in the light of their experience as men of the world, from the facts directly proved.

The question whether a mortgage was not made in the usual and ordinary course of business of the debtor, within the meaning of Pub. Sts. c. 157, § 98, is a question of fact, and whether, if it was not so made, the inference shall be drawn that the mortgagee had reasonable cause to believe that a fraud on the insolvent law was intended, is another question of fact.

A loan upon mortgage made to a debtor in embarrassed circumstances for the purpose of enabling him to pay his debts and go on, is not necessarily a fraud on the insolvent law.

In proceedings by the assignees of an insolvent debtor to set aside a mortgage given by him in alleged fraud of the insolvent law, where the parties are strangers, and the defendant is not concerned with the fact that the plaintiff is a trustee, the full court, on appeal, will be slow to disturb the discretion of the single judge as to costs where the decree on the merits is affirmed.

BILL IN EQUITY, filed in the Superior Court on April 29, 1889, by the assignees of John M. Humphrey, an insolvent debtor, against Charles F. Morrill, Alvin T. Morrill, Oakes A. Drinkwater, and Irving Smith, composing the firm of Morrill Brothers and Company, to set aside a mortgage given to them by Humphrey, as a fraud on the insolvent law, and against

Edward C. Neal, who held a lien on the property of the insolvent debtor. A master, to whom the case was referred, found the following facts.

The plaintiffs are assignees in insolvency of John M. Humphrey, of Lynn, who was adjudged an insolvent on April 16, 1889, upon a petition filed against him by a creditor, Henry H. Green, on April 10, 1889. Said Humphrey had, previous to said date, been engaged for several years in Lynn in the business of a retail jeweller. The defendants, Charles F. Morrill and others, copartners under the firm name of Morrill Brothers and Company, are wholesale jewellers in Boston.

About the middle of January, 1889, Humphrey applied to Morrill Brothers and Company for a loan of $6,000, offering to give them as security therefor a mortgage on his stock of goods. Previous to this they had had but one business transaction, a small purchase from said firm by Humphrey, which was afterwards paid for by him. Said firm had been acquainted with Humphrey for about two years. Members of the firm, in consequence of this application, went to Lynn and made some examination of the stock of goods and books belonging to Humphrey, and agreed to make the loan. Humphrey represented to said firm that he wanted the money to enable him to pay debts and relieve himself from the embarrassment caused thereby, and also promised to trade with them thereafter to a considerable amount. He told them that he needed $1,500 at once to meet some pressing need, and that amount was paid to him by said firm about January 26, 1889, they receiving from him at first a bill in the form of a common bill of parcels, afterwards exchanged for a bill of sale in the common form, of the fixtures in Humphrey's store, and of certain watches and articles of jewelry. A form of delivery of these goods to said firm was gone through with by Humphrey, he going among the goods and stating to one of the firm that he delivered them to the firm, and this partner placing his hand on some of the goods and saying that he took possession of them, afterwards telling Humphrey that he left them in Humphrey's possession as an agent or bailee for the firm, and telling him that they were not to be sold without his making report of such sale to the firm. No change in position of said goods was made, nor

any change in their situation or the surrounding circumstances, that could be seen by or known to third parties. The master found that no sufficient or legal delivery of the goods was made by Humphrey to said firm, but was of opinion, however, that the determination of the question of the sufficiency or legality of said delivery was rendered unessential to the decision of the matters involved in this case by the subsequent events, hereinafter stated, in the dealing between the parties. Afterwards, in pursuance of the agreement between the firm and Humphrey, a full schedule of his goods was made, and a mortgage thereof made by him to them dated and delivered February 25, 1889, and recorded in the clerk's office of the city of Lynn on the same day. A form of redelivery of the first mentioned lot of goods was gone through with by said firm to said Humphrey. Upon the execution of this mortgage, $3,500 in cash was paid to Humphrey by said firm, and they agreed to give him the balance of $1,000 covered by the mortgage, which they did by selling him goods to that amount before proceedings in insolvency were commenced against him. Humphrey made a statement to the firm, while this transaction was in progress between them, of his indebtedness to various parties, and told them it showed all his debts. The master found that this statement was not a true one, and that at the time he made it he had not sufficient property to pay his debts, and this was true at the time he made said mortgage; but did not, however, find that the fact that his property was insufficient to pay his debts was known to said firm. It did not appear whether any part of the money so paid to Humphrey was used by him in the payment of his debts. On or about April 2, 1889, he absconded, and it did not appear at the hearing that he had since been heard from by any person. Humphrey was commonly known in the jewelry trade in Boston, and generally in business circles in Lynn and Boston, as a person of poor financial standing and reputation. He had in a great number of instances given checks on banks in which he deposited when he had no funds to meet them, and his checks and promissory notes had been protested for non-payment in a very large number of instances; this having been done throughout the year preceding the giving of the mortgage. Besides the instances above given, he was during that year in almost

continual financial difficulties, and this was well and gener-
ally known among his acquaintances. The master found that
Humphrey at the time he made the bill of sale to the firm,
and when he made the mortgage to them, was unable to pay
his debts in the ordinary course, as persons carrying on trade
ordinarily do. Inquiry by the firm among the acquaintances
of Humphrey, or in ordinary business circles or sources of
inquiry, would have disclosed said facts to the firm. The
mortgage covered all the fixtures and furnishings of the store
occupied by Humphrey, and his whole stock in trade, and all
his property, except book accounts not exceeding a face value
of $500, and certain diamonds pledged to secure debts of nearly
their full value; and the mortgage by Humphrey was not
made in the usual and ordinary course of his business. The
mortgage was given by Humphrey to the firm with a view to
secure to them the payment of $1,500, and of $119 for a watch
sold to him by the firm before the mortgage was given, and
$162, the amount of a protested note of Humphrey held by
the firm, and thereby give them a preference, and also with a
view to prevent his property from coming to his assignee in in-
solvency, to prevent the same from being distributed under the
laws relating to insolvency, and to defeat the provisions thereof,
Humphrey being at the time the mortgage was given insolvent
and in contemplation of insolvency. The master found that the
firm, when they took the bill of sale and the mortgage, actually
knew that Humphrey was of poor financial standing and reputa-
tion; that he was in financial embarrassment, and before the
date of the mortgage knew of a note of Humphrey for $162
being protested on February 16, 1889, for non-payment, said note
being purchased after protest by the firm; and further found
that the firm at the time they received the mortgage, as well as
when they received the bill of sale, had reasonable cause to
believe that Humphrey was insolvent and in contemplation
of insolvency, and that the mortgage and the bill of sale were
made in fraud of the laws relating to insolvency and to defeat
the object thereof. The master found that the mortgage was
void, and that the plaintiffs had the right to retain possession of
the property described in the mortgage and the bill of complaint
as assets of the estate of Humphrey, subject to the rights therein

of the defendant Neal, and that Neal, under the instruments annexed to his answer, had the right to the possession, as the owner thereof, of certain of said goods as to the identity of which the parties were agreed, unless the sum of $2,000, due to him on account thereof from Humphrey, was paid to him. Nothing was paid to the firm by Humphrey on the mortgage, and if the same were valid, the face of the mortgage, and inter' est thereon at the rate mentioned in the notes secured thereby, would be due to the firm.

The findings in regard to Neal are not material to the points decided in this case.

At the hearing before the master, in addition to the facts stated in his report, there was evidence tending to show that, at the time the defendants paid to Humphrey the $1,500, he stated to them that he desired the money to pay his indebtedness, and to go on in business ; that he represented to them that he was worth from five to six thousand dollars over his liabilities ; that the defendants examined his accounts and stock, and thought that he was doing a thriving and profitable business, and that he had assets beyond the property covered by the mortgage.

One Green, to whom Humphrey owed a large sum of money, testified that two or three days before the mortgage was made Humphrey informed him that it was about to be done; that he made no objection to it, and that just before the mortgage was put on Humphrey wanted to know how much he owed him; that on comparison of their papers they tallied exactly ; and that Humphrey said that he was going to put the mortgage on for the express purpose of paying him.

Another creditor of Humphrey, one Carpenter, testified that he knew that the mortgage was about to be taken, and in January, 1889, had advised the defendants to loan money to Humphrey.

Upon the examination of one Hill, who had been in the employ of Humphrey, Hill was asked from whom he had borrowed money for the purpose of taking up protested notes or checks of Humphrey ; and upon objection being made, the master ruled " that, it appearing by the mortgage and evidence introduced by the plaintiff that this mortgage was given to Morrill Brothers and Company on the whole stock in trade of Humphrey at his only place of business, this fact is *prima facie* evidence of a cause of

belief in Morrill Brothers and Company that the conveyance was not made in the usual and ordinary course of business."

Hearing in the Superior Court, before *Lathrop*, J., who found for the defendants, and ordered the bill to be dismissed, with costs to the defendants ; and the plaintiffs appealed.

*I. B. Keith & J. H. Sisk*, for the plaintiffs.

*J. Lowell & A. F. Means*, for the defendants.

HOLMES, J.　This is a bill brought by the assignees in insolvency of one Humphrey, to set aside a mortgage for $6,000 to the defendants, as a fraud on the insolvent law. The master found that the mortgage was made with a view to give the defendants a preference, mainly in respect of $1,500, parcel of the $6,000 secured, and also with a view to prevent the property from coming to the assignees, and that it was void. The single justice found for the defendants. The case comes before us on the evidence, and is wholly a question of fact. For that reason we shall not discuss it at length, but shall state the conclusions to which we have been led by reading the evidence.

There is no doubt that the defendants actually paid over the $6,000, or that the mortgage was executed without any haste or secrecy, and with the knowledge and approval of at least the two principal creditors, parties not friendly to or co-operating with the defendants. The master declines to find that the fact that the insolvent's property was insufficient to pay his debts was known to the defendants, and the evidence is that they were informed by the insolvent that the amount advanced would enable him to pay his debts and go on. For more than a month afterwards the debtor did go on with his business, and then, upon the defendants' discovery that the conditions of the mortgage had been broken, and that probably a fraud had been practised upon them, he absconded. There is no evidence, beyond the fact of his absconding and the state of his assets, that he kept any property from his assignees. The indications are that he carried nothing away with him, and that he spent all that he got in paying debts, and in the regular course of his business, although we do not assume this to be proved beyond controversy. In view of the whole evidence, and especially of the undisputed facts, and of the master's declining to find that the insufficiency of the insolvent's property to pay his debts was

known to the defendants, it seems to us that his finding that the defendants had reasonable cause to believe that the mortgage was made in fraud of the insolvent law must have been based upon a proposition of law which is not disclosed in his report, but which is to be gathered from the report of the evidence, and of his rulings upon it. That proposition we understand to have been in effect, although not precisely so stated in words, that if the mortgage was given on Humphrey's whole stock in trade at his only place of business, this fact not merely warrants a finding, but, as matter of law, raises a *prima facie* presumption that the mortgage was not given in the usual course of business, and that the defendants had reasonable cause to believe that a fraud on the insolvent law was intended. We mention this because, if the master's principal finding is explained by his supposing himself bound by a somewhat stricter rule of law than we should lay down, we should feel a greater freedom than we otherwise should feel in adopting a conclusion which seems to us more consistent with the subsidiary findings and the evidence than the one to which he felt himself forced to come.

The proposition which we have stated narrows too much the function of the master as a judge of fact. Presumptions of fact generally are questions of fact. They are merely the major premises of those inferences which juries are at liberty to draw, in the light of their experience as men of the world, from the facts directly proved. *Commonwealth* v. *Briant*, 142 Mass. 463, 464. *Doyle* v. *Boston & Albany Railroad*, 145 Mass. 386, 387, 388. The question whether a mortgage was not made in the usual and ordinary course of business of the debtor, within the meaning of Pub. Sts. c. 157, § 98, is a question of fact. *Alden* v. *Marsh*, 97 Mass. 160, 163. *Buffum* v. *Jones*, 144 Mass. 29. *Peabody* v. *Knapp*, 153 Mass. 242. *Killam* v. *Peirce*, 153 Mass. 502. Whether, if it was not so made, the inference shall be drawn that the mortgagee had reasonable cause to believe that a fraud on the insolvent law was intended, is another question of fact. *Bridges* v. *Miles*, 152 Mass. 249, 253.

In view of what we have said, we regard the validity of the mortgage as set at large for our consideration. In our opinion, the evidence is insufficient to do more than to suggest a suspicion that the insolvent kept, or intended to keep, his assets

from the hands of an assignee. We do not believe that he had such an intention in his mind. If he did, all the evidence shows that it was not shared by the defendants, nor do we see how we can say that they had reasonable cause to believe in the existence of an intention which, even after the event, we do not believe to have existed. Humphrey exhibited to the defendants a schedule of his debts — false, but believed by them to be true — and made a statement of his assets, according to which he was solvent. The defendants were informed and believed that there were large assets not embraced in the mortgage. To them the mortgage appeared as a perfectly natural step. A loan upon mortgage made to a debtor in embarrassed circumstances, for the purpose of enabling him to pay his debts and go on, is not necessarily a fraud on the insolvent law. *Bush* v. *Boutelle*, 156 Mass. 167, 171. *Clark* v. *Sawyer*, 151 Mass. 64. The defendants examined Humphrey's books, and satisfied themselves that he was doing a profitable business. Unless it be assumed, as matter of law, that the mortgage was not in the usual course of business, and that therefore, also as matter of law, the defendants had reasonable cause to believe that a fraud on the insolvent law was intended, we see no such ground for doubting the validity of the instrument.

There is no suggestion that the defendants intended to aid in giving a preference to any creditor other than themselves. The only question remaining, and the one most pressed, is whether they intended to prefer themselves. The details of the transaction, mainly as found by the master, are these. About the middle of January, the insolvent applied to the defendants for a loan of $6,000 upon a mortgage of his stock of goods. He told them that he needed $1,500 at once. This sum was paid to him on January 26, 1889, and for it he executed a bill of parcels, afterwards exchanged for a bill of sale of his fixtures and certain watches, etc. One of the defendants put his hand on the articles, saying that he took possession of them, and told the insolvent that he left them with him as the defendants' agent or bailee.

After the defendants had examined Humphrey's stock, and a full schedule had been made out, a mortgage of the greater part of his goods was made on February 25, 1889, for $6,000. The

defendants redelivered the goods covered by the bill of sale for $1,500 of this amount, paid $3,500 in cash, and agreed to give him the remaining $1,000 in goods which he purchased from them in the line of his trade, which goods he received. It seems to us impossible to discover any intent to give a preference in this transaction. Such an intent is disproved by the fact that neither party doubted that the bill of sale given for the $1,500, whether a sale or a mortgage, was valid.

The master's report says that the mortgage was given " with a view to secure to them the payment of said $1,500, and of $119 for a watch sold to him by said firm before said mortgage was given, and $162, the amount of a protested note of Humphrey held by said firm, and thereby give them a preference." In view of the undisputed testimony, the two small items hardly would have been mentioned had it not been for the large one. The note was taken up by the defendants, with Humphrey's approval, some time in February, while the negotiations for the mortgage were going on.

We see no sufficient ground for changing the decree appealed from in respect of costs. The defendants are not concerned with the fact that the plaintiffs are trustees. In this proceeding the parties are strangers. *Hill* v. *Magan*, 2 Molloy, 460. 2 Perry on Trusts, § 891. Moreover, as the decree on the merits is affirmed, we should be slow to disturb the discretion of the single justice on appeal. *The Maggie J. Smith*, 123 U. S. 349, 356.

*Decree affirmed.*