ALFRED B. SHEPPERSON & others *vs.* T. HENRY PEARSE
& others.

Suffolk. December 15, 1897. — January 8, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Equity Practice — Finding of Master — Promissory Note.*

In order to warrant this court in sustaining an exception to the report of a master,
to whom a suit in equity has been referred, and in overruling an order of the
Superior Court confirming the report, it must appear that the finding of the
master was clearly wrong.

BILL IN EQUITY, filed March 12, 1896, in the Superior Court,
by Alfred B. Shepperson, against T. Henry Pearse, Marion M.
Pearse, and Elbridge A. Kingman, to reach and apply, in pay-
ment of promissory notes made by T. Henry Pearse and held by
the plaintiff, shares of stock in two Illinois corporations alleged
to belong to T. Henry Pearse, and to have been transferred by
him in fraud of creditors to Marion M. Pearse, who was his wife,
and to Mary C. Kingman, the wife of Elbridge A. Kingman.
Fred A. Fernald and Frederick C. Rising, who had obtained
undivided fractional interests in the notes from Shepperson,
were admitted, on motion, as parties plaintiff in the suit; and,
by an amendment to the bill, Mary C. Kingman was joined as a
party defendant.

The case was referred to a master, who found and reported
the following facts. The defendant T. Henry Pearse made six
promissory notes for $6,500 in the aggregate, each dated May 31,
1895, payable at different dates to one Taylor, and secured by
shares of the stock of two corporations, called the Universal
Cotton Gin and Wool Burrer Company, and the Universal Coal
Dumping Car Company. Taylor indorsed the six notes to the
plaintiff, Shepperson, after maturity. The latter is entitled to
recover from T. Henry Pearse $3,500 with interest, and Pearse
is entitled to a set-off of $1,000 for professional services ren-
dered to Taylor before the notes were transferred.

The Universal Cotton Gin and Wool Burrer Company was

incorporated under the laws of the State of Illinois, in January, 1894, for the purpose of obtaining patents upon the inventions of one Samuel L. Johnston. Its capital stock was $250,000, divided into 25,000 shares of ten dollars each. Johnston, Elbridge A. Kingman, and one Philbrook each subscribed for and received one share of its stock, but neither paid the subscription price.

The inventions were conveyed to the company in accordance with the provisions of an agreement between Pearse and Johnston. A certificate for the remaining 24,997 shares issued to Pearse as trustee. He then surrendered this certificate for cancellation, donated 5,000 shares to the treasury of the company, and took out three new certificates, one of 4,997 shares to himself, as trustee, another of 10,000 shares to himself, as trustee, and one in the name of his wife for 5,000 shares. Pearse paid from his own funds all the expenses of organizing the company and obtaining letters patent in the United States. He sold many shares of the stock standing in his name as trustee, and from the money obtained by this sale paid all that was expended by the company in obtaining letters patent in foreign countries upon Johnston's inventions, building machines, and in the prosecution of the company's business. Mrs. Pearse did not contribute anything to the company, nor did she advance anything to Pearse to be expended in promoting the company, or in the prosecution of its business. Pearse was then insolvent, and heavily indebted to Taylor. He caused this stock to be issued to his wife and to himself, as trustee, to hinder, delay, and defraud his creditors, and to prevent them from taking it on legal process. Mrs. Pearse had in her name 16,993 shares of the stock of the corporation, and Pearse 100 shares, when the plaintiff's injunction was served, and the equitable title to these 17,093 shares was then in Pearse, and they were subject to attachment by his creditors.

The Empire Cotton Gin and Wool Burrer Company was also an Illinois corporation, and was formed for the purpose of obtaining letters patent upon Johnston's inventions. Its capital stock was $500,000, divided into 50,000 shares of the par value of ten dollars each. All but four of these shares issued to Pearse, as trustee. He transferred a larger part of these shares

to his wife, and she held in her name 23,008 shares when the injunction issued. Pearse then held one share only. Mrs. Pearse did not contribute anything to this company, nor advance anything to Pearse to be expended in the prosecution of its business. Pearse caused the shares of this company to be issued to his wife for the purpose of concealing them from his creditors. He was then insolvent, and all these shares standing in her name are subject to attachment by creditors.

The defendant Mary C. Kingman is a *bona fide* holder for value of 400 shares of the capital stock of the Universal Cotton Gin and Wool Burrer Company, and 250 shares of the capital stock of the Empire Cotton Gin and Wool Burrer Company.

The defendant Marion M. Pearse, on March 19, 1896, assigned 21,000 shares of the stock of the Empire Company to the defendant Mary C. Kingman, as collateral security for previous loans or advances, amounting to $2,000, to Mr. and Mrs. Pearse. The assignment was, however, made before the injunction issued, and Mrs. Kingman took the shares in good faith, and in ignorance of the fact that an application for an injunction had been made.

On the subject matter of the amount of indebtedness from the defendant T. Henry Pearse to the defendant Mary C. Kingman, the defendant Pearse gave the following testimony. The examination then going on was directed to the stock certificate book of the Empire Cotton Gin and Wool Burrer Company, and the number mentioned is the number of the stock certificate: " *Q.* Number 151 is dated March 18, 1896, for 21,000 shares to Mary C. Kingman. What did Mrs. Kingman pay for that? *A.* Nothing; that was taken as collateral. — *Q.* For what? *A.* Money loaned Mrs. Pearse and myself. — *Q.* For how much? *A.* $2,000. — *Q.* Have you given your note for it? *A.* Yes. — *Q.* For how much is the note? *A.* It may be $3,000. — *Q.* When did you get this money of Mrs. Kingman? *A.* A long time ago. — *Q.* Have you any account of moneys you have received of Mrs. Kingman? *A.* No; I have n't. — *Q.* When did you give that note? *A.* Some two or three years ago."

The defendant Elbridge A. Kingman testified, among other things, as follows: " *Q.* Had you advanced to Mr. Pearse at any time any money for these companies? *A.* Yes. — *Q.* When had you advanced money? *A.* Oh, at different times. — *Q.* In

what form? *A.* In money and checks. — *Q.* Have you the checks here? *A.* Some of them. — *Q.* Will you produce those? Have you a book of account of these matters with Mr. Pearse? *A.* No, sir; I have not. — *Q.* Here are all the checks; were any payments made by you prior to that time? *A.* I think so; some. — *Q.* Have you any account of those? *A.* No. — *Q.* Can you state what it was? *A.* No. — *Q.* Was it paid back to you? *A.* Yes; we settled up occasionally, and if the balance was not all paid I took notes. — *Q.* These checks, you say, don't show on their face that they were for the purpose of the company? *A.* I don't think they do. — *Q.* How do you connect these, not having any books, with the company? *A.* With the stubs."

The checks were then offered in evidence; they were made by Mary C. Kingman to E. A. Kingman, and indorsed by him in various forms, and amounted to $2,000.16.

"*Q.* Here are various notes that you have produced, Mr. Kingman; are these notes still unpaid? *A.* Yes, sir. — *Q.* Are they in addition to these checks? *A.* No, sir. They represent the balances due from Mr. Pearse to Mrs. Kingman up to date. — *Q.* The total amount of these notes would show what was due to Mrs. Kingman up to date? *A.* Yes, sir."

The notes were then offered in evidence.

"*Q.* What does this amount to? *A.* The face of the notes amounts to about $4,000. — *Q.* These notes were for certain stock that you testified the other day was issued to Mrs. Kingman in payment for these notes? *A.* Payment for accommodation of furnishing money by her. — *Q.* Were those moneys actually paid by her? *A.* Yes."

On cross-examination the witness testified as follows: "*Q.* You loaned him this money from time to time, and charged him no interest except on the notes, and certain stock was issued to you, and paid for in that way; the $4,000 represents cash actually loaned? *A.* Yes; about $4,000."

The case came on to be heard upon exceptions taken by the defendants Kingman to the master's report; and it was ordered that the exceptions be overruled, and the report confirmed. From this order the defendants appealed.

A final decree was then entered, in accordance with the

facts found by the master; and the defendants appealed to this court.

*C. W. Bartlett & E. R. Anderson,* for the defendants.

*G. W. Anderson & E. N. Lacey,* for the plaintiffs.

MORTON, J. The only evidence which either party requested the master to report was some which related to the amount of the indebtedness of the defendant T. Henry Pearse to the defendant Mary C. Kingman. It does not appear whether all of the evidence bearing upon that matter is reported. Assuming that it is, we see nothing in it which would justify us in saying that the finding of the master was clearly wrong, as it would have to be in order to warrant us in sustaining the exception to it, and in overruling the order confirming the master's report. The defendant T. Henry Pearse testified, amongst other things, that the amount was $2,000. The master may have thought that there was no satisfactory evidence of the payment of money by Mrs. Kingman to Pearse except by check, and the amount paid by check was $2,000.16, thus appearing to corroborate the above statement by Pearse. The master was not bound to accept the notes as conclusive. They were evidence to be considered and weighed in connection with the other evidence in the case, and to have such effect as the master, taking all of the circumstances into account, might think them justly entitled to. There is nothing to show that the master treated them in any other manner.          *Decree affirmed.*