ASAHEL GOODELL *vs.* LAFAYETTE W. GOODELL & another.

Hampshire. November 14, 1898. — March 18, 1899.

Present: FIELD, C. J., HOLMES, MORTON, & LATHROP, JJ.

*Guardian and Ward — Colorable Sale — Findings of Master — Equity Practice — Costs.*

The application by a guardian to sell the whole of his ward's real estate at the inventoried price, less the inchoate right of dower of the ward's wife, to pay himself as an alleged and the only creditor of the ward, on a claim larger than the whole amount of the estate, which claim is in great part fictitious and accompanied by an admission of credits equally fictitious, to take it out of the statute of limitations, without communicating these facts to the judge of probate, without stating by whom the offer was made, and then selling the land to his brother without any money passing between them, and taking back the estate, of which his brother had not taken possession, by merely surrendering to his brother obligations which the latter had given to him, leaving in his brother's hands one lot of land of small value, show a consummated attempt to get his ward's property into his own hands under a colorable sale; and the ward may maintain a bill in equity against the guardian and his brother to set aside the sale.

It is within the power of a single justice of the Superior Court or of this court sitting in equity, upon a proper exception to a master's report, when the evidence is before the justice, to review the master's findings of facts, and, when a case is before this court on appeal from the decree of a single justice, it is the duty of this court to examine the evidence and to decide the case according to its judgment, giving due weight to the finding of the justice; but there is nothing to prevent the court from coming to a different conclusion from that reached by the master and the justice.

Where a bill in equity is brought by a ward to set aside a conveyance of land, which was sold by his guardian to the guardian's brother and by him conveyed back to the guardian, no money passing in the transaction, the guardian making the sale for the purpose of paying an alleged debt of his ward to himself, and charging himself in his account with the so called proceeds, and crediting himself with the same amount in payment of the debt, if this account has not been passed on by the Probate Court, it is not open to the defendant to contend that,

if he is to be considered a purchaser, the plaintiff should be required to repay or tender to him the amount paid by the latter, with interest, less the amount received by him for timber cut and sold.

In a suit in equity by a ward against his guardian to set aside a colorable sale of the ward's property, one ground on which the plaintiff rests not having been proved, but a decree having been entered in his favor, with costs, upon an appeal from the decree, this court, in affirming the decree on the merits, will not generally disturb the discretion of the single justice in allowing costs.

BILL IN EQUITY, filed May 27, 1893, in the Superior Court, against Lafayette W. Goodell and Wesley M. Goodell, to restrain them from disposing of certain real estate in Belchertown, to set aside the conveyance of the same, and for other relief. At the hearing, a decree was entered for the plaintiff; and the defendants appealed to this court. The facts appear in the opinion.

*C. L. Gardner & C. G. Gardner*, for the defendants.

*W. S. B. Hopkins & C. N. Clark*, (*W. S. B. Hopkins, Jr.* with them,) for the plaintiff.

LATHROP, J. Flavel Gaylord was, on February 7, 1893, appointed guardian of Asahel Goodell, an insane person, in place of Lafayette W. Goodell, the first named defendant, who was appointed guardian on January 6, 1891, and resigned on December 2, 1892. In February, 1891, Lafayette filed an inventory of his ward's estate, which consisted entirely of real estate, in six lots, the total amount of the inventory being $5,140. The next month he petitioned the Probate Court for leave to sell at private sale his ward's estate to pay debts, alleging that the debts due from his ward amounted to $6,922.18; that there was no personal property; and that he was offered the price stated in the inventory for each lot, except one which was inventoried at $3,000, and for which he was offered $2,600. Leave to sell was granted in April, 1891; and, soon after, the first named defendant, as guardian, conveyed to Wesley M. Goodell, his brother, the other defendant, all of the real estate for the alleged consideration of $4,745, which was the amount of the offer. On December 7, 1891, and in January, 1892, Wesley conveyed by three deeds the same real estate to the first named defendant, excepting two lots, appraised at $345, which Wesley now retains and claims to own. These three deeds have not been recorded.

The guardian seeks by this bill in equity for an injunction to restrain the defendants from disposing of the real estate, or the

timber or wood thereon; to have the conveyance declared null and void; to have the defendants ordered to account for the rents and profits received by them, and for waste committed by them. There are other prayers which it is unnecessary to state.

The case was sent to a master, who made a report which was devoted to a consideration of the question of the amount due the first named defendant from his ward. It appeared from the report that the guardian was the only creditor of his ward, and that he claimed over $6,000 to be due him, some of which the master disallowed; and that the greater part of the rest was barred by the statute of limitations, unless there was a mutual account between them, which the master found was not the case.

On exceptions to this report, the case was recommitted to the master for further hearing on the whole case. The master's second report finds that, on March 15, 1892, the first named defendant filed in the Probate Court his first guardian's account charging himself with the proceeds of his ward's real estate, $4,745, and for rent $405, making in all $5,150. He asked to be allowed for "Amount paid myself for labor and cash paid by me on account of said ward, board, care, and clothing furnished said ward and wife," $5,150. On May 1, 1893, the first named defendant filed his second and final account as guardian, charging himself for timber $30, and asked to be allowed for money paid out, debts incurred, and charges, $1,364.73. Neither of these accounts has been passed upon by the Probate Court.

The report states, after setting forth the conveyances between the two defendants, that the first named defendant " continued to live upon and cultivate the premises, conveyed by him as guardian to Wesley, after the conveyance as he had always done before." The report further states : " I find no reason to modify or change in any respect my report filed June 1, 1896, made pursuant to the order issued by this court at its June sitting, 1895 "; and that the price obtained for said real estate, sold under the license of the Probate Court, was a fair and adequate price.

The master concludes his report as follows: " While there are many circumstances attending the sale by Lafayette W. of his ward's real estate to his brother Wesley M., and the subsequent conveyance by him to Lafayette W., that have a suspi-

cious aspect, still, in view of the explanation of Wesley M., that he bought the property in good faith with the intention of selling off the wood and timber from the real estate and with the proceeds therefrom to pay the notes indorsed for his benefit by his brother, and that, becoming alarmed at his ill success in attempting to carry out his plan, he accepted his brother Lafayette W.'s offer to take most of the property off his hands at the price he paid for it, and in view of the fact that Lafayette W., as guardian, must account to the Probate Court for the proceeds of the sale under the license of his ward's real estate, which I have found was sold at a fair price, I do not find that the plaintiff has proved that any conspiracy was entered into or any fraud committed against him or his estate, or that he or his estate suffered any injury by the sale complained of in his bill. I therefore find that the bill should be dismissed."

The evidence taken at the hearing before the master was annexed to the report. In addition to the facts already stated, about which there was no dispute, it appeared that Wesley never entered into occupation of the land; and that after the first named defendant received his three deeds, he sold timber from the land to the amount of $2,600. Lafayette testified that he did not remember that he told the judge of probate as to who made the offer for the land; that the fact was that the offer was made by Wesley; that he expected Wesley to pay in money; that he presumed he expected he would pay in the way he agreed to; that he could not remember anything about the transaction; and that "nothing was arranged to accept the payment from Wesley," and that "there was no understanding on my part that I should repurchase the real estate. I don't remember that anything was said about the repayment."

It appeared from the testimony of the president of the First National Bank of Amherst that a promissory note for $2,100, payable in ten days, signed by Wesley and indorsed by Lafayette, was discounted by the bank on May 11, and paid on May 25.

Wesley testified as to this transaction as follows: " I got some money to pay for the land of the First National Bank of Amherst upon note of $2,100, indorsed by Lafayette; and $2,000 I borrowed of my brother. I don't know as any other money passed.

When I sold the property back again I paid the notes. I gave note indorsed by L. W. Goodell, $2,100. I gave note to my brother Lafayette, $2,000. I gave my brother another note, $645, making $4,745. I gave the ten days' note indorsed by Lafayette for $2,100, and I gave him my note for $2,100 when I paid the $2,100 ten-day note."

Wesley further testified: " There was no talk or agreement beforehand that I should convey back the real estate to Lafayette. He was to stay there while our mother lived. . . . I proposed to cut off the wood and pay off my brother. But as it resulted, I became afraid to cut it off. I found it took too much capital."

The difference between the inventoried value of the land and the price at which it was sold was accounted for by the fact that this represented the value of the inchoate right of dower of the wife of the insane ward.

The guardian filed four exceptions to the report. The first two were overruled by a justice of the Superior Court, and are not now insisted upon. The third was to the finding of the master that no conspiracy was entered into, or any fraud committed against the complainant or his estate, or that he or his estate suffered no injury by the sale complained of, because the findings were not based on the evidence in the case, but were contrary thereto and the weight thereof. The fourth exception was to the finding that the bill should be dismissed, because such finding was not required by or consistent with the evidence in the case, but contrary thereto, and the true meaning and construction thereof.

The decree sets forth that the case was heard upon the two reports of the master, and the evidence reported by him, and was argued by counsel. It overruled the first and second exceptions, and the third, " except so far as the master's finding is inconsistent with the finding of the court made at this hearing, and set forth below in this decree." The fourth exception was sustained.

The decree further set forth that the sale made by the first named defendant, under the license of the Probate Court, ostensibly to Wesley M. Goodell, was a colorable sale, and that the first named defendant was the real purchaser, as alleged in the bill;

and adjudged the conveyances to be void and of no effect. It also ordered a reconveyance of the lands to the guardian, and the payment to the guardian of $2,600, the value of the timber cut by the first named defendant, who was also ordered to pay the costs of the case. The decree concluded as follows: " This decree shall not operate to prejudice Lafayette W. Goodell against having his proper charges against his said ward allowed by the Probate Court, nor against his collection and enforcement of the same."

The case comes before us on the defendants' appeal from this decree, with the reports of the master and the evidence.

It is to be noticed, in the first place, that the finding of the master at the end of his second report was directed to the questions of conspiracy and fraud on the part of the defendants, whereas the question now before us is whether the sale made by the first named defendant was a colorable sale from himself as guardian to himself in his individual capacity. It is also to be noticed that the master's finding that there was no conspiracy or fraud was not based solely on the explanation of Wesley, which the master does not state that he finds to be true, but was based also upon other facts, namely, that the first named defendant, as guardian, must account to the Probate Court for the proceeds of the sale ; and that the sale was for a fair price.

We are of opinion that the justice who heard the case was, upon the admitted facts and evidence, right in finding that the sale was a colorable one. The application by the first named defendant to sell the whole of the real estate in his hands as guardian, at the inventoried price, less the inchoate right of dower, to pay himself as an alleged creditor of his father, and the only creditor, on a claim larger than the whole amount of the estate, which claim was in great part fictitious and accompanied by an admission of credits equally fictitious, to take it out of the statute of limitations, without communicating these facts to the judge of probate, without stating by whom the offer was made, and then selling the land to his brother without any money passing between them, and taking back the estate, of which his brother had not taken possession, by merely surrendering to his brother obligations that his brother had given to him, but leaving in his brother's hands one lot of land

valued at $345, show a consummated attempt to get his ward's property into his own hands under a colorable sale.

It is a well settled principle of law that an agent with authority to sell cannot be a purchaser, either directly or indirectly. This principle applies to administrators, trustees, or guardians. *Litchfield* v. *Cudworth,* 15 Pick. 23. *Wyman* v. *Hooper,* 2 Gray, 141, 145. *Yeackel* v. *Litchfield,* 13 Allen, 417, 419. *Ives* v. *Ashley,* 97 Mass. 198. *Walker* v. *Walker,* 101 Mass. 169, 172. *Jones* v. *Dexter,* 130 Mass. 380, 383.

A transaction of this kind, while not absolutely void, is voidable; and any one having an interest in the transaction may maintain a bill in equity to rescind it. The facts that the sale is free from fraud and that the price obtained is adequate make no difference. *Yeackel* v. *Litchfield,* and *Walker* v. *Walker, ubi supra.*

The defendants contend that the remedy, if any, is to be found in the Probate Court. But this is not a case where the guardian seeks to disturb anything that has been done in the Probate Court, but to hold the first named defendant responsible for an abuse of the authority imposed upon him by that court. Indeed, the first case cited by the defendants on this point shows this distinctly. It was there held that this court, as a court of chancery, could not re-settle an account alleged to have been erroneously or fraudulently settled in a probate court; but that the court had jurisdiction in equity where the executor sold to an agent on the executor's account. *Jennison* v. *Hapgood,* 7 Pick. 1.

In determining the weight to be given to the master's report, the defendants rely upon the familiar rule that it is not to be set aside unless clearly shown to be erroneous. But if any such question arises in this case, there can be no question of the power of a single justice of the Superior Court or of this court, upon a proper exception, when the evidence is before him, to review the findings of fact. And when a case is before this court on appeal from the decree of a single justice, it is the duty of this court to examine the evidence, and to decide the case according to its judgment, giving due weight to the finding of the justice. If the master and the single justice agree, the court is reluctant to disturb the decree. *Shepperson* v. *Pearse,*

170 Mass. 206. But there is nothing to prevent the court from coming to a different conclusion from that reached by the master and the single justice. In *Callanan* v. *Chapin*, 158 Mass. 113, the master made certain findings of fact to which exceptions were taken, and the case was heard by a justice of the Superior Court, who overruled the exceptions and confirmed the report, and entered a decree for the plaintiff. The justice thereupon reported the case for the determination of this court. The case was considered anew on the master's report and the evidence, and the bill was dismissed.

In *Leighton* v. *Morrill*, 159 Mass. 271, the decree of a justice of the Superior Court sustaining exceptions to a master's report was sustained by this court.

In *Urann* v. *Coates*, 117 Mass. 41, a single justice of this court overruled some of the findings of fact made by the master, as appears from the original papers in the case. The findings of the single justice were sustained by the full court, without any reference being made to the weight to be given to the master's report.

It is also contended by the defendants that, if the first named defendant is to be considered a purchaser, the guardian should be required to repay or tender to him the amount paid by the latter, with interest, less the amount received by him for the wood and timber. We fail, on the evidence, to see the force of this contention. No money passed in the transaction. The first named defendant made a pretended sale for the purpose of paying the alleged debt of his ward to himself; he has charged himself in his first account with the so called proceeds, and credited himself with the same amount in payment of the debt. This account has not been passed on by the Probate Court, and that court has the power to amend the account.

Lastly, the defendants contend that the guardian, having failed to prove fraud, which was one ground upon which he rested, should not be allowed his costs. Costs in equity are in the discretion of the court; and the fact that a plaintiff succeeds on one ground and fails upon another ground relied upon may or may not be a reason for the exercise of the discretion of the court. In the present case the guardian is the prevailing party, and the decree in his favor on the merits is to be affirmed;

and we should be slow to disturb the discretion of the single justice on appeal. *Leighton* v. *Morrill*, 159 Mass. 271. We see no reason why the guardian should not be entitled to costs.

*Decree affirmed.*