JOSEPH E. MORIN *vs.* GEORGE M. CLARK & another.

Suffolk.    November 12, 1936. — January 27, 1937.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Equity Pleading and Practice*, Master: report of evidence, recommittal, Decree. *Sale*, What constitutes, Transfer of title.

Analysis by QUA, J., of Rule 90 of the Superior Court (1932).
The method, adopted by a master in declining a request, properly presented under Rule 90 of the Superior Court (1932), for a summary of so much of the evidence as was necessary to enable the court to determine whether it was sufficient in law to support certain findings of fact in the report, of stating in substance that his subsidiary findings were so far detailed and so closely followed the evidence which he believed that they themselves constituted such a summary, was not commended by this court; but an examination of the report failed to disclose that the master's statement was not true, and therefore a failure to comply with the rule was not shown.
A motion to recommit a report to a master on the ground that a summary by him, purporting to set forth so much of the evidence as is necessary to enable the court to determine whether it was sufficient in law to support certain findings of fact in the report, was not accurate and fair, should be accompanied by affidavit setting forth facts to substantiate such contention and, if not so accompanied, properly may be denied.

On all the facts respecting the title to pattern plates for the manufacture of "pouring sheets" used by publishers in casting stereotype plates, which patterns were manufactured by the plaintiff on the defendant's order and were retained in the plaintiff's possession for a period of years while the pouring sheets were from time to time manufactured from them for the defendant's customers, the proper conclusion was that it was the intention of the parties that the patterns should be the property of the defendant.

An injunction in a final decree in a suit in equity, granting relief sought by the defendant by counterclaim by restraining the plaintiff from making use of certain information given him by the defendant, was improper as being beyond the scope of the counterclaim, which did not allege that such information was of a secret nature or given confidentially.

BILL IN EQUITY, filed in the Superior Court on November 27, 1935.

The suit was heard on a master's report by *O'Connell*, J., by whose order there were entered an interlocutory decree overruling exceptions by the plaintiff to the master's report and confirming the report, and a final decree (1) dismissing the bill, (2) adjudging the title to the patterns in question to be in the defendant Clark, (3) ordering the plaintiff to pay that defendant $200 as damages, and (4) enjoining the plaintiff or any person in privity with him from unlawfully competing with that defendant by utilizing information given by that defendant to the plaintiff as to the specifications of pouring sheets used by that defendant's present or past customers, giving such information to others for the purpose of manufacturing pouring sheets for that defendant's present or past customers, or by directly or indirectly making, selling, or offering for sale, pouring sheets made from the said pattern sheets and made in accordance with the information furnished by that defendant to the plaintiff. The plaintiff appealed.

*H. E. Cole*, for the plaintiff.

*H. A. Baker*, (*A. B. Bagley* with him,) for the defendants.

QUA, J.   The bill in substance alleges that the defendant Clark has replevied from Morin eighty pattern plates for the manufacture of the "pouring sheets" which are used by publishers in casting stereotype plates; that these pattern plates are the property of Morin; that they have peculiar

value in addition to the value of the labor and materials employed in forming them as indicating the sizes and shapes of the casting boxes used by the various publishers who buy the pouring sheets made from the patterns; that Clark now intends to make pouring sheets for said publishers and that he replevied the patterns in bad faith for the purpose of securing possession of them long enough to obtain the benefit of the special information which cannot be had in any other way. There are prayers for injunctive relief, for a return of the pattern plates and for damages. The defendant Clark, in his answer, denies material allegations of the bill, claims title to the pattern plates in himself, asserts that Morin wrongfully withheld them and seeks relief by way of counterclaim.

A master's report has been confirmed, and a final decree has been entered dismissing Morin's bill and, on Clark's counterclaim, declaring that title to the pattern plates is in Clark and that he is entitled to possession of them, ordering Morin to pay damages and enjoining Morin from utilizing information given to him by Clark as to the specifications of pouring sheets used by Clark's customers and from making or selling pouring sheets made from the patterns in accordance with such information.

There was no error in denying Morin's motion to recommit. This motion was based upon the alleged failure of the master to comply with Rule 90 of the Superior Court (1932) in not appending to his report at Morin's written request brief, accurate and fair summaries of so much of the evidence as should be necessary to enable the court to determine whether the evidence was sufficient in law to support certain findings to which Morin presented objections as the basis of his exceptions. Preliminary requirements of the rule as to furnishing the master with a transcript of the evidence by an approved stenographer had been observed. The master appended a statement, referring as we construe it to all of the objections in question, in which he says, "the report in itself contains a brief, accurate and fair summary of so much of the evidence presented to the master as is necessary to enable the court to determine such questions . . .

the report and its findings of subsidiary facts adequately summarize the evidence upon which such findings were based, and in each instance . . . such finding is based on credible evidence, the substance of which supports the finding and·is embodied therein. Under these circumstances it seems to me that no further summary of the evidence is necessary or required." Certainly a bald assertion by a master that his findings are supported by credible evidence adds nothing to the report and does not satisfy the rule. But here the master means to say that the subsidiary findings are so far particularized and so closely follow the evidence which the master believed as in themselves to constitute a summary of that evidence within the requirements of the rule.

Rule 90 is a valid exercise of the power to regulate procedure and practice in equity confirmed in the Superior Court by St. 1926, c. 138. See now G. L. (Ter. Ed.) c. 214, § 6. The rule binds alike the parties, the master and the court. It is not to be ignored or evaded, but is to be made effective in all its parts according to their true meaning and intent. The provisions as to appending a summary of evi-. dence, which were inserted by the· revision of the rules in 1932, were in part little more than declaratory of then existing practice, *Cook* v. *Scheffreen,* 215 Mass. 444, 447, but in so far as they relate to objections raising the question whether there was any evidence upon which a finding could rest, they were undoubtedly intended to go somewhat further and to define a clear and ready method by which a party could bring to the court the question of law involved. This would do away with an anomaly supposed to exist in that although in cases tried before a judge or jury the question whether there was any evidence to support a finding could easily be saved as of right, it was widely believed that the same question arising before a master could be saved only if the court could be prevailed upon in its discretion to order the evidence reported, which the court might be reluctant to do. See First Report of Judicial Council, 57, 59; Third Report of Judicial Council, 62; *Smith* v. *Lloyd,* 224 Mass. 173; *Wood* v. *Baldwin,* 259 Mass. 499, 508. The new

procedure was carefully guarded to avoid the evils of delay, prolixity and unnecessary expense which are often associated with reports of evidence. The rule does not call for a report of evidence, but calls only for a brief summary of evidence. It does not even necessarily require that all the evidence on the point in question be summarized. It is enough if the master summarizes "so much of the evidence as shall be necessary" to show that there was evidence "sufficient in law to support a finding," care being taken to see that the summary of so much as is summarized is "accurate and fair" and that it does not by reason of omissions present a distorted picture. The summary is not to be used to attack before the court the correctness of the master's findings of fact, but is to be used "for the sole purpose of enabling the court to determine" the question of law whether the evidence "was sufficient in law to support" the findings. We may add, however, that there is nothing in the rule which prevents the court in its discretion from requiring the master to report the evidence itself, as the court could do before the amendments of 1932, with the result that the reported evidence may be used to show that the master's findings of fact are plainly wrong. *Goodell* v. *Goodell,* 173 Mass. 140, 146. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 490. But that was not done in this case.

Examining the master's report in view of the foregoing analysis of Rule 90, we cannot say that the master's statement that his subsidiary findings constitute summaries under the rule is not true. They are in such form and detail that they might constitute such summaries, and that to have appended any further summaries might have been only to add to the report a copy of that which was already contained in it. It has been implied that the summary appended under the rule may incorporate portions of the body of the report by reference. *Fulgenitti* v. *Cariddi,* 292 Mass. 321. While we do not commend this method of complying with the rule, we cannot say, in this instance at least, that there has not been compliance. If Morin believed that in fact the report did not include accurate and fair summaries, as on its face we think it purports to do, his remedy was to

present with his motion to recommit evidence by affidavit tending to show that the master's statement was not correct. *Koch, petitioner,* 225 Mass. 148. *Epstein* v. *Epstein,* 287 Mass. 248, 254. *Pearson* v. *Mulloney,* 289 Mass. 508, 512. *Respro, Inc.* v. *Worcester Backing Co.* 291 Mass. 467, 472. *Israel* v. *Sommer,* 292 Mass. 113, 119–120.

There was no error in confirming the master's report. Some of the exceptions raise no questions of law, either because they relate only to statements of the master as to what Clark claimed, alleged or contended or because they are merely assertions that the findings are wrong or that the master failed to make certain findings. *Baush Machine Tool Co.* v. *Hill,* 231 Mass. 30, 41. *Warfield* v. *Adams,* 215 Mass. 506, 519–520. *Carleton & Hovey Co.* v. *Burns,* 285 Mass. 479, 483. Others relate to findings on matters of such slight importance that they can have had no effect upon the result of the case. The findings to which exceptions have been taken on the ground of want of evidence, in so far as they are material, seem to us to have adequate support, if, as the master states, his detailed findings are in themselves summaries of the evidence. There was no harm in allowing Clark in his testimony to refer to the claims in his patent, the patent itself being in evidence. We have carefully examined all of the exceptions, and we are of opinion that harmful error does not appear on the face of the report as to any of them. It is an elementary rule that an exception to a master's report cannot be sustained unless error appears on the face of the report. *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151, 155. It follows that all of the master's findings are to stand. This includes those findings which contain an element of law, sometimes called mixed findings of law and fact, as well as findings of pure fact. *MacLeod* v. *Davis,* 290 Mass. 335, 338. *Israel* v. *Sommer,* 292 Mass. 113, 119–120.

The title to the pattern plates is a fundamental issue. Findings of the master, briefly stated, are: In 1923 or 1924 Morin was in business as a sheet metal worker, and Clark was supplying pouring sheets to the publishing trade. At that time Clark and one Proctor asked Morin if he would

make pouring sheets for them. Morin said he would. Clark asked about the expense of making the pattern plates and samples, and Morin told him to get the orders and "all of that expense would be taken care of in the first orders received." This conversation was repeated in substance two or three times, the last time being in 1932. Morin never made a specific charge or rendered a bill to Clark for the cost. It was agreed that no charge should be made for the manufacture of the pattern plates. Morin made them, furnishing the labor and materials. Morin retained possession of them, using them solely to make pouring sheets for Clark. All the pouring sheets and pattern plates were made by Morin "for Clark solely upon information furnished by Clark." This information had been obtained by Clark at considerable expense and was furnished to Morin solely for the purpose of enabling him to make pouring sheets ordered by publishers from Clark. All except possibly one or two of the pattern plates replevied were made with reference to a patent for pouring sheets held by Clark and the pouring sheets made from them would be covered by the Clark patent, if the pattern plates were used as they were designed to be used. Except for the information contained in them, the pattern plates have no intrinsic value beyond the value of the material of which they are made, which is merely nominal. Most of them are now of no use because of changes made by the publishers in the dimensions of their pouring sheets. Morin and Clark continued to do business in the manner described until 1935, shortly before the replevin action was brought.

The master makes no ultimate finding as to title, thereby rendering it necessary for the court to draw such inference as it deems proper. And it is the duty of this court on appeal to draw its own inference without regard to the finding of the Superior Court. *Robinson* v. *Pero*, 272 Mass. 482, 484. Whether title passed depends upon the intention of the parties. Title may pass although possession remains with the vendor, if the parties so intend. G. L. (Ter. Ed.) c. 106, § 21. *Goddard* v. *Binney*, 115 Mass. 450, 455. It is not very clear which conclusion should be reached. There are factors

tending each way.  Clark approached Morin for the purpose of buying the pouring sheets, to which, of course, he was to take title.  At the same time Clark asked Morin about the expense of making pattern plates and samples.  It seems reasonably clear that Clark was to buy and take title to the samples.  The samples and the pattern plates were both expense items, and they were treated together in the conversation.  There was no real occasion for Clark to concern himself about the cost of pattern plates, if they were to remain Morin's property.  Morin's reply that all that expense would be taken care of in the first orders received and the agreement that no charge should be made for the pattern plates are entirely consistent with an intention that Clark should get title to the pattern plates as he would to the other articles which he was ordering, but that together with the samples they should be included without separate charge and treated as paid for in the payments to be made for the other articles.  If the pattern plates were simply tools with which Morin was obliged to equip himself in order to make the other articles for Clark, it seems strange that the parties should cover the same ground in renewed conversation on two or three later occasions.  It was natural that the pattern plates should remain in Morin's possession as he would have to use them in making the pouring sheets.  Then there are the further facts that the pattern plates were made "for" Clark, at Clark's direction, from information gathered by Clark, were specially adapted for Clark's purposes and to Clark's patent, were used only in Clark's behalf and have little or no value except for the information which Clark caused to be embodied in them.  On the whole we incline to the view that title to all the pattern plates made for Clark passed to him.  *Goddard* v. *Binney,* 115 Mass. 450.  *Bristol Manuf. Corp.* v. *Arkwright Mills,* 213 Mass. 172.  See *Boston Blower Co.* v. *Brown,* 149 Mass. 421.  It follows that paragraph 1 of the final decree rightly dismissed Morin's bill and that paragraph 2 contains no error harmful to Morin.  Whether paragraph 2 was properly limited to the eighty plates is not before us.

Paragraph 3 of the final decree, which orders Morin to

pay damages, rests squarely upon a finding of the master. That also must stand.

There are no allegations in Clark's answer or counterclaim to the effect that the information furnished by Clark to Morin was secret information or that it was Clark's private property or that it was furnished to Morin confidentially. Therefore paragraph 4 of the final decree, which grants injunctive relief to Clark, goes beyond the scope of the pleadings and was not warranted. *Fordyce* v. *Dillaway,* 212 Mass. 404, 411. *Gamwell·* v. *Bigley,* 253 Mass. 378. *Knowlton* v. *Fourth-Atlantic National Bank of Boston,* 264 Mass. 181, 193. *Colella.* v. *Essex County Acceptance Corp.* 288 Mass. 221, 229.

It follows that the interlocutory order and decree appealed from are affirmed, and that the final decree is to be modified by omitting paragraph 4 and as so modified is affirmed. No costs are allowed on this appeal.

*Ordered accordingly.*