SHELBURNE SHIRT CO., INC. *vs.* IRVING I. SINGER & others.

Bristol.    October 27, 1947. — January 8, 1948.

Present: QUA, C.J., LUMMUS, RONAN, & SPALDING, JJ.

*Equity Pleading and Practice*, Master: findings, report of evidence. *Trust*, Constructive.

Findings by a master, based on evidence fully reported in accordance with a court order, are not to be reversed unless plainly wrong.

In a suit in equity to establish a constructive trust in a one-half interest in certain real estate based on an alleged oral agreement that it should be purchased for the joint benefit of the plaintiff and the defendant, a finding by a master, on evidence fully reported, that there had been no such oral agreement was not plainly wrong and a decree dismissing the bill was affirmed.

BILL IN EQUITY, filed in the Superior Court on April 24, 1945, against Irving I. Singer and Flint Mills Property, Inc.

M. Joseph Madowsky was permitted to intervene as a defendant.

The suit was heard by *Williams*, J.

*W. A. Torphy*, (*P. V. McDonough* with him,) for the plaintiff.

*R. C. Westgate*, (*H. S. R. Buffinton* with him,) for the defendants.

*F. T. Leahy*, (*A. Moskow* with him,) for the intervener.

RONAN, J.  The plaintiff and the defendant Singer, who did business under the name of the Pilgrim Curtain Company, were lessees for several years of different portions of the Flint Mills property, so called, under leases from the city of Fall River, which had become the owner of this property in 1935 and 1936 through tax foreclosure proceedings in the Land Court.  The property consisted of two large five-story

mill buildings connected by another five-story building known as the picker building. The plaintiff and Singer, hereinafter called the defendant, occupied space in each of these three buildings. The plaintiff's annual rental was five cents a square foot while that of the defendant was six cents a square foot. There were other tenants, and a part of the premises was vacant. The plaintiff's lease expired December 31, 1945, but the plaintiff had an option for five years more; the defendant's lease expired in July, 1946, and he had been informed that the city would not give him another lease. For a number of years the city had incurred an annual loss of $24,000 in maintaining the property and was anxious to dispose of it. One Fromberg, a practising attorney in New York city, submitted on December 21, 1944, in his own name but in behalf of the defendant, an offer to buy the property for $1,000. Upon learning that this offer had been made in behalf of the defendant, the plaintiff on January 3, 1945, submitted an offer to purchase for a similar amount. Both offers came before the city council on January 9, 1945, and, after hearing counsel for both parties, the city council passed an order accepting the defendant's offer. On the next day, the plaintiff submitted a second offer to purchase for $15,000. The mayor on January 17, 1945, vetoed the order passed by the city council on January 9, 1945. On February 5, 1945, one Doherty submitted an offer of $16,000. At a meeting of the city council on February 13, 1945, that body voted to override the mayor's veto, to sell the property to Fromberg for $1,000, to accept $15,000 as a gift from Fromberg to the city, and to grant leave to the plaintiff and Doherty to withdraw their offers. The city conveyed the property to Fromberg on March 12, 1945, and he on March 27, 1945, conveyed it to the defendant Flint Mills Properties, Inc., which had been organized for the purpose of taking title from Fromberg. The stock of this defendant was owned equally by the defendant Singer and one Madowsky, who has been allowed to intervene in the present proceedings.

The plaintiff brought this bill in equity to establish a constructive trust in the property and to compel a conveyance of this one-half interest to it. The judge on May

18, 1945, referred the suit to a master under the usual order of reference, Rule 86 of the Superior Court (1932), and on the same day appointed a commissioner to report the evidence. The plaintiff filed objections to the master's report and a motion to recommit with instructions to the master to strike out certain findings. A motion to amend the order of reference to the master by requiring him to report all the evidence was allowed after the judge found that this provision had been inadvertently omitted from the reference. The case was then recommitted to him for this purpose, and a transcript of the evidence was filed and was made a part of the report. The plaintiff's exceptions to the report were overruled and the report was confirmed; its motion to recommit for the purpose of striking out certain findings was denied; and a final decree was entered dismissing the bill. The plaintiff appealed from these interlocutory decrees and also from the final decree.

The plaintiff's contentions are that the defendant through Fromberg made an oral agreement to purchase the property for the equal and joint benefit of the plaintiff and the defendant; that Fromberg was authorized to make this agreement in behalf of the defendant; that Fromberg became and was the attorney for both parties in the acquisition of the property, which was of peculiar and special value to both parties; that a fiduciary relation existed between them relative to the purchase of the property; that the plaintiff thereby secured an equitable interest in the property when it was purchased by Fromberg; and that the defendant in violation of his fiduciary obligation refuses to recognize the plaintiff's interest in the property.

The plaintiff filed seven exceptions to the master's report. The first five were objections to findings of fact and were based upon the ground that they were not supported by the evidence. The remaining two exceptions referred to rulings on evidence by the master, but we consider them as waived because they have not been briefed or argued. *Boston* v. *Santosuosso*, 307 Mass. 302, 353. *Geffen* v. *Paletz*, 312 Mass. 48, 58. *Coe* v. *Coe*, 316 Mass. 423. We do not intimate that there is anything in either of the last two exceptions if

the questions were presented.  The five exceptions also furnished the basis of a motion to recommit to the master and for an order from the judge instructing the master to strike from the report the five findings of fact    The exceptions and the motion in effect raised the same question, which was that the findings complained of were plainly wrong.  The findings of the master which are challenged are in substance that there was no oral agreement that the property was to be purchased for the joint interest of the plaintiff and the defendant; that the parties in their dealings with reference to the property never went beyond preliminary negotiations; that there was no fiduciary relation between Fromberg and the plaintiff; that Fromberg acted solely as the agent of the defendant; that the corporate defendant is the sole owner of the property; and that the plaintiff has no interest therein.

The main object of referring a suit to a master is to have the facts settled by him and to put the case in a position where nothing remains to be done except for the judge to apply correct principles of law to the facts found.  Little is to be gained if after adverse findings a party can require a judge of the trial court and this court upon appeal to review all the evidence introduced before the master for the purpose of determining whether there is error in some finding of fact.  A reference requiring a report of all the evidence is seldom issued.  A judge may, however, in his discretion order the evidence to be reported either by the terms of the reference or subsequently, if satisfied that in the interests of justice the evidence should be brought before him.  *Morin* v. *Clark*, 296 Mass. 479, 483.  *Minot* v. *Minot*, 319 Mass. 253, 258.  The reported evidence is to be examined and is to be used to test the correctness of the findings of the master, but no finding is to be reversed unless the evidence demonstrates that it is plainly wrong.  The question is not what conclusion a judge reviewing the evidence might come to upon a careful reading of the transcript of the evidence, but whether it can be said from a review of the evidence that the findings made by the master, who heard and saw the witnesses, are plainly wrong.  *Richards* v. *Todd*, 127 Mass. 167, 172.  *Goodell* v. *Goodell*, 173 Mass. 140, 146.

*Joslin* v. *Goddard*, 187 Mass. 165, 167. *Atherton* v. *Emerson*, 199 Mass. 199, 207, 208. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 490. *Morin* v *Clark*, 296 Mass. 479, 483. *Downey* v. *Union Trust Co.* 312 Mass. 405, 417. *American Employers' Ins. Co.* v. *Webster, ante*, 161.

There can be no dispute that the parties never entered into any agreement relative to a division of the property or its care or management after its acquisition, although the plaintiff was anxious to secure separate ownership of that part of the premises which it occupied. Indeed, the defendant always insisted that it was impossible to make any practical division of the property. The plaintiff does not contend that any agreement was reached as to these matters, but it complains that the master misconstrued its contention, which was simply that it had entered into an agreement with the defendant through Fromberg for the purchase of the property by him for their joint benefit and that the finding to the contrary was plainly wrong. The plaintiff's president, Lasker, and its attorney, Schneider, conferred with Fromberg on February 5, 1945, and discussed the joint acquisition of the property and then its division between the plaintiff and the defendant. Fromberg was to report to the defendant concerning these matters and inform the plaintiff what the defendant would do. The plaintiff does not contend that any agreement was reached at this meeting but its sole contention is that one was made on February 12, 1945. Fromberg telephoned to Schneider on February 12, 1945, that the offers for the purchase of the property were to come before the city council on the next evening and that he wanted Schneider to know that, so far as the defendant was concerned, whether the plaintiff or the defendant acquired the property, "they did not want to be at each other's throats and that he was willing to sit down and work out some equitable arrangement." In reply to a request for a writing to this effect, Fromberg said he had no time "and that he would handle the matter in Fall River." At Schneider's suggestion he telephoned to Lasker and repeated these remarks to him. Lasker and Schneider testified to their version of these telephone calls, which in substance was that

Fromberg made an agreement to purchase the property for the joint benefit of the plaintiff and the defendant. There is strength in the plaintiff's contention that such agreement was made. We need not recite the other factors that tend to support this contention. On the other hand, there was evidence that pointed in an opposite direction. The voluminous evidence has been examined. It would serve no useful purpose to set forth its details or even a summary of it. It is enough to say that a reading of the entire evidence does not show that the master was plainly wrong in finding that the parties never agreed to a joint purchase of the property for their joint benefit. Neither is there anything contained in the report, like the finding that Fromberg "would handle the matter in Fall River" or that the plaintiff's attorney was not present at the meeting of the city council on February 13, 1945, or any other stray expression upon which the plaintiff relies, that is necessarily inconsistent with the finding that no such agreement was made between the parties. Such expressions are to be construed with the other findings of the master and in the light gained from an examination of the evidence. *Morrison* v. *Morrison*, 320 Mass. 133, 134, 135. *Sawyer* v. *Shader*, 321 Mass. 725, 727. Whether considered singly or collectively, such expressions are not decisive of the case. It is undisputed that the plaintiff had not withdrawn its bid of $15,000, and that this bid, the one of Doherty for $16,000 and Fromberg's bid made in behalf of the defendant for $1,000 were to come before the city council on February 13, 1945. There is no evidence that the plaintiff knew that Fromberg would raise his bid to $16,000 by including the gift, so called, of $15,000 until it was read at this meeting, or that the plaintiff had placed any limitations on the amount Fromberg should bid. It seems unlikely that, if Fromberg was to act as the plaintiff's agent, the plaintiff would not give him instruction or at least limit the amount which he should bid. In the next place, there was evidence before the master which he adopted as true that, after the bid of Fromberg was accepted by the city council, Epstein, the plaintiff's treasurer, in reply to a remark of one of the bystanders who was in the exit from the

council chamber that the plaintiff would have a good landlord, stated that the defendant would also get a good tenant in the plaintiff. We need not pursue the matter farther, for it is enough to say that we discover nothing in the master's report, which was based upon all the evidence, that indicates any error. The finding that there was no agreement for a joint purchase of the property swept away the only ground upon which the plaintiff attempted to establish a constructive trust. See *Cann* v. *Barry*, 293 Mass. 313; *DiBurro* v. *Bonasia*, 321 Mass. 12; *Salter* v. *Beal*, 321 Mass. 105.

It follows that the interlocutory decrees overruling the plaintiff's exceptions and confirming the report, and refusing to recommit the report for the purpose of striking out certain findings of the master, must be affirmed. The final decree dismissing the bill is affirmed with costs.

*So ordered.*