MORRIS MICHELSON *vs.* ROBERT A. ARONSON.

Suffolk.    December 12, 1975. — March 19, 1976.

Present: ROSE, KEVILLE, & ARMSTRONG, JJ.

*Practice, Civil,* Master: findings, report of evidence; Appeal; Report of evidence. *Rules of Civil Procedure.    Rules of Appellate Procedure.*

Where a master was directed in an order of reference not to report the evidence, the transcript of the proceedings before the master was not a "transcript of the proceedings" within the meaning of Rule 8 (a) of the Massachusetts Rules of Appellate Procedure and was not properly a part of the record on appeal.  [183-190]

This court would not consider the defendant's allegations that the findings of a master in a civil action were erroneous, contradictory, or inconsistent where the defendant did not make his objections in the trial court.  [190-193]

BILL IN EQUITY filed in the Superior Court on November 22, 1972.

The case was heard by *Mason,* J., on a master's report.

*Henry P. Sorett* for the defendant.
*Edward Rabinovitz* for the plaintiff.

ARMSTRONG, J.   In this bill in equity and counterclaim, each of the parties seeks an accounting of moneys allegedly due him by reason of certain transactions between them in their practice of law. The plaintiff also seeks the return of files removed by the defendant from the plaintiff's law offices, which the parties had shared. The case was referred to a master on July 27, 1973, who, on July 22, 1974, filed a report in which he found the defendant liable on a number of the plaintiff's claims and the plaintiff not liable on the counterclaim. The defendant filed numerous objections to the report on August 8, 1974, asserting in most instances that findings were unsupported by the evidence or were contrary to the evidence. On November 20, 1974, a judge of the Superior Court (a) overruled the defendant's objections to the master's report, (b) impliedly denied the defendant's motions to strike the report and to recommit the same (by not acting on those motions), (c) adopted the report (subject to a minor revision apparently not at issue), and (d) entered a judgment whereby the defendant's liability was established and his counterclaim dismissed. The defendant appealed from that judgment on December 18, 1974.

1. Before considering the merits of the appeal, we address ourselves to a procedural issue raised in the defendant's brief as to the content of the record before us. The issue arose through the following sequence of events. The order of reference to the master provided that he "find the subsidiary facts on each issue tried and report them and his general findings based on such subsidiary findings to the court," but that (with exceptions not here material) he "not report any evidence...." On January 28, 1975, more than a month after the defendant had filed his claim of appeal, he filed a motion in the Superior Court to amend the order of reference in such manner as to require the master to file with his report a transcript of the proceedings before him and the exhibits received by him in evidence.

The motion was denied on February 7. On March 10, after the defendant's appeal had been entered, he filed a motion in this court to amend the record on appeal by the inclusion of a transcript of the proceedings before the master. The motion was denied on March 12 by a single justice without prejudice to the filing of a like motion in the Superior Court. Such a motion was filed in the Superior Court on March 20 and denied on April 29. On May 14, 1975, the defendant returned to this court with essentially the same motion, which was denied by the same single justice on May 27. The defendant contends that the denial of the motions alluded to was error and that, under the new rules of civil and appellate procedure which took effect July 1, 1974, he is entitled as matter of right to the inclusion of the transcript of the proceedings before the master in the record on appeal.

We are satisfied that the contention is without merit and have so expressed ourselves on two previous occasions. See *Blakeley* v. *Pilgrim Packing Co. ante,* 19, 20, fn. 2 (1976); *Lynch* v. *Planning Bd. of Groton, post,* 781 (1976)[1] But in those cases (as well as the cases cited in fn. 1) we did so in summary fashion because we regarded the point as sufficiently self-evident to require no elaboration. We take this opportunity to express our view in greater detail in an effort to dispel the confusion which appears to have arisen as to the effect of the new rules on proceedings before masters in nonjury cases. Compare *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.* 367 Mass. 464, 470-471 (1975).

The defendant bases his contention on the first sentence of Mass.R.A.P. 8(a), as amended, 367 Mass. 919 (1975):

---

[1] In both of the cited cases the master's report, as here, was filed after July 1, 1974. We reached the same conclusion in three earlier cases in which the report of a master or auditor (facts final) had been filed and acted upon before July 1, 1974, but in which the appeals were entered in this court after that date and after the new rules of appellate procedure had taken effect. See *Peabody Constr. Co. Inc.* v. *First Federal Parking Corp.* 3 Mass. App. Ct. 768 (1975); *Hess Oil & Chem. Corp.* v. *Ristuccia,* 3 Mass. App. Ct. 772 (1975); *Whaler Motor Inn, Inc.* v. *Parsons,* 3 Mass. App. Ct. 662, 665 (1975).

Michelson v. Aronson.

"The original papers and exhibits on file, *the transcript of proceedings, if any,* and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases" (emphasis supplied). The rules of appellate procedure were adopted along with the new rules of civil procedure by the Supreme Judicial Court in a single order (365 Mass. 730 [1974]), and both sets of rules must be read together as a comprehensive whole. Compare *Giacobbe* v. *First Coolidge Corp.* 367 Mass. 309, 315-317 (1975). Our rules are patterned on rules which have governed civil procedure in the Federal courts for many years (*id.* at 315), and "the adjudged construction theretofore given to the Federal rules is to be given to our rules, absent compelling reasons to the contrary or significant differences in content." *Rollins Environmental Serv. Inc.* v. *Superior Court,* 368 Mass. 174, 179-180 (1975).

The pertinent provisions of the new Rules of Civil Procedure are found in Mass.R.Civ.P. 53 (e), as amended, 367 Mass. 917 (1975). Paragraph (1) thereof provides that a master "shall file the report ... and in an action [such as this one] to be tried without a jury, *when directed by the order of reference,* shall file with it a transcript of the proceedings and of the evidence" (emphasis supplied). Paragraph (3) provides that "[i]n an action to be tried by a jury the master shall *not* be directed to report the evidence" (emphasis supplied). While Mass.R.Civ.P. 53 (e) (1) and (3) are markedly similar to Fed.R.Civ.P. 53 (e) (1) and (3) in most respects, Fed.R.Civ.P. 53 (e) (1) differs from the corresponding Massachusetts rule in that a master appointed thereunder in a nonjury case is required to file with his report "*unless otherwise directed by the order of reference,* ... a transcript of the proceedings and of the evidence" (emphasis supplied). This deviation in the language of the Massachusetts rule from that of the Federal rule on which it was based reflects the traditional practice in our courts (unlike the practice of the Federal courts) that a master is rarely ordered to report the evidence heard by him. See *Peters* v. *Wallach,* 366 Mass. 622,

626 (1975), and cases cited. Federal precedents under Fed.R.Civ.P. 53 (e) (1) are therefore of questionable value in construing Mass.R.Civ.P. 53 (e) (1).

More in point are the Federal cases decided under Fed.R.Civ.P. 53 (e) (3), under which a master in a jury case may not be directed to report the evidence. Those cases hold that such evidence, even where embodied in a stenographic transcript, is not properly a part of the record in the trial court or the record on appeal, despite the inclusion of language in Fed.R.A.P. 10 (a) as to the record on appeal which is identical to that relied upon by the defendant in Mass.R.A.P. 8 (a). See *Phillips Petroleum Co.* v. *Williams,* 159 F. 2d 1011, 1013 (5th Cir. 1947); *In re A. Maggioli Co.* 3 F.R.D. 83, 85 (D. Mass. 1943); Moore's Federal Practice, par. 53.10, at 2982 (2d ed. 1975). We see no reason to reach a different result where the trial judge, though not forbidden to order a report of the evidence, declines in his discretion to do so.

Such discretion is plainly conferred by Mass.R.Civ.P. 53 (e) (1).[2] In that respect the rule made no change in the pre-existing law of this Commonwealth. See *Shelburne Shirt Co. Inc.* v. *Singer,* 322 Mass. 262, 265 (1948); *Shaw* v. *United Cape Cod Cranberry Co.* 332 Mass. 675, 679, 680 (1955), and cases cited. Compare *Peters* v. *Wallach,* 366 Mass. at 626-627. Implicit in that rule, moreover, is a continued recognition of the principle that absent an order that a master file a transcript with his report, such a transcript is not a part of the record on appeal. See *Royal Tool & Gauge Corp.* v. *Clerk of the Courts for the County of Hampden,* 326 Mass. 390, 391 (1950). To hold otherwise would largely defeat the purpose of referring a case to a

---

[2] We note that the order of reference in the present case was entered before July 1, 1974, when Mass.R.Civ.P. became operative. That order remained in effect by virtue of Mass.R.Civ.P. 1A, subpar. 5, 365 Mass. 732 (1974), after July 1. But this chronology makes no difference, as the prescribed form of an order of reference was not materially changed when the new rules took effect. Ccmpare Rule 86 of the Superior Court (1954), as amended, with Rule 49, § 2, of the Superior Court (1974).

master as expounded in such cases as *Shelburne Shirt Co. Inc.* v. *Singer,* 322 Mass. at 265, and *Peters* v. *Wallach,* 366 Mass. at 626. Such a holding would also fly in the face of the more general proposition that an appellate court need not consider documents which were not made a part of the record on which the trial judge based his decision. See *Milton* v. *Civil Serv. Commn.* 365 Mass. 368, 379 (1974); *United States ex rel. Kellogg* v. *McBee,* 452 F. 2d 134, 137 (7th Cir. 1971); *United States ex rel. Mulvaney* v. *Rush,* 487 F. 2d 684, 687 (3d Cir. 1973); *Borden, Inc.* v. *FTC,* 495 F. 2d 785, 787-788 (7th Cir. 1974).

In the present case the order of reference did not direct the master to report the evidence, but instead directed him not to do so. Thus, under Mass.R.Civ.P. 53 (e) (1), the transcript was not authorized to be filed and was not before the trial judge. We therefore conclude that the transcript relied upon by the defendant is not a "transcript of the proceedings" within the meaning of Mass.R.A.P. 8 (a) and not properly a part of the record on appeal.

The defendant's contention that he is thereby deprived of any "way to challenge even the most serious and grotesque errors" in the master's report is answered by the plain language of Rule 49, § 7, of the Superior Court (1974):

"In an action to be tried without a jury, when the master has submitted a draft of his report to counsel for all parties, he shall notify them of a time and place when and where they may attend and suggest such alterations as they may think proper. Unless the court expressly orders otherwise, in an action to be tried without a jury whenever any preliminary objection presented to the master raises a question of law which depends upon evidence not reported, the master, upon written request presented with the preliminary objection, shall append to his report, for the sole purpose of enabling the court to determine such question of law, a brief, accurate and fair summary of so much of the evidence as shall be necessary for such purpose. But where the preliminary ob-

jection raises the question whether the evidence was sufficient in law to support a finding of fact made by the master, no such summary shall be made without special order of the court, unless (1) the evidence shall have been taken by a reporter selected or approved by the master before any evidence was introduced, and (2) the objecting party shall at his expense furnish the master, within the time fixed by the master, with a transcript of so much of the evidence taken by such reporter as is material to such question of law. The master shall furnish the parties with copies of his proposed summary at least five (5) days before filing his report. The master shall finally settle the draft of his report and give notice thereof to counsel for the parties, furnishing them with copies of the report insofar as it differs from the draft report. Any party may serve a motion to strike the master's report in whole or in part or to recommit the master's report. Final objections to such report shall thereafter be served upon the other parties within ten (10) days after serving of notice of the filing of report in accordance with Mass.R.Civ.P. 53 (e) (2) ."

That rule, like its predecessor, Rule 90 of the Superior Court (1954),[3] afforded the defendant ample opportunity

---

[3] "When the master has prepared a draft copy of his report, he shall furnish the parties with copies thereof and notify them of a time and place when and where they may attend and suggest such alterations as they may think proper; upon consideration whereof, the master shall finally settle the draft of his report, and give notice thereof to the parties, furnishing them with copies of the report in so far as it differs from the draft report; whereupon ten days shall be allowed for bringing in written objections thereto, briefly and clearly specifying the matters objected to and the cause thereof, which objections shall be appended to the report. Unless the court expressly orders otherwise, whenever any objection presented to the master raises a question of law which depends upon evidence not reported, the master, upon written request presented with the objection, shall append to his report, for the sole purpose of enabling the court to determine such question of law, a brief, accurate and fair summary of so much of the evidence as shall be necessary for such purpose. But where the objection raises the question whether the evidence was sufficient in law to support a finding of fact made by the master, no such summary shall be made without special order of the court, unless (1) the evidence shall have

to preserve his right to raise questions of law depending on unreported evidence. But so far as the record discloses, he never submitted to the master any preliminary objections of the type contemplated by Rule 49, § 7 (see *Kass* v. *Todd,* 362 Mass. 169, 173 [1972]), or any requests for summaries of evidence as required thereunder (see *Pearson* v. *Mulloney,* 289 Mass. 508, 512 [1935]; *Minot* v. *Minot,* 319 Mass. 253, 259 [1946]).

The "preliminary" objections referred to in the second and third sentences of Rule 49, § 7, are to be distinguished from the "[f]inal" objections referred to in the last sentence thereof. The preliminary objections, which must be filed before the master submits his report, are the means by which supposed errors are called to his attention in order to give him an opportunity to act upon them and, if any supposed error is not eliminated, in order that the final report shall have appended to it the summaries of evidence necessary to enable the court to act upon final objections (and motions) depending on unreported evidence. It is implicit in the rule that a final objection depending on unreported evidence has no standing unless a groundwork is laid through a preliminary objection and a summary of evidence, both of which should be appended to the report.[4]

By following those procedures the defendant could have made the asserted errors of law apparent on the face of the master's report and thus open to review by the trial

---

been taken by a stenographer selected or approved by the master before any evidence was introduced, and (2) the objecting party shall at his expense furnish the master, within the time allowed for bringing in objections, with a transcript of so much of the evidence taken by such stenographer as is material to such question of law. The master shall furnish the parties with copies of his proposed summary at least five days before filing his report. Upon the filing of the report in court a party whose objections are appended thereto shall be deemed to have excepted to the report for the reasons set forth in the objections, and no additional exceptions may be filed without a special order of the court."

[4] For a discussion of the distinction between a report of the evidence heard by a master and a summary of the type contemplated by rule 49, § 7, and its predecessor rule, see *Morin* v. *Clark,* 296 Mass. 479, 483 (1937).

judge and by this court. See *Morin* v. *Clark*, 296 Mass. 479, 483 (1937); *Cantor* v. *Cantor*, 325 Mass. 719, 722 (1950). Having failed to do so, the defendant may not now raise objections to matters not apparent on the face of the report.

2. The defendant also contends that apart from errors supposedly committed by the master which would be disclosed by an examination of the transcript, various inconsistencies and errors of law are apparent on the face of the master's report. He asks that we strike the report and order a new trial or, alternatively, that we strike "the erroneous, contradictory and inconsistent findings" therefrom and reduce the amount of the judgment accordingly.

Under Mass.R.Civ.P. 53(e)(2), a master's findings of fact in a case to be tried without a jury must be accepted "unless clearly erroneous." We interpret that rule as prescribing the same standard of review as the one applicable to a confirmed master's report before the effective date of the new rules. Compare *Zuckerman* v. *Blakeley*, 3 Mass. App. Ct. 685, 686-687 (1975). Accordingly, "both the trial judge and the appellate justices are required to treat the master's findings of fact as binding unless they are mutually inconsistent, contradictory, plainly wrong or vitiated in view of the controlling law." *Wormstead* v. *Town Manager of Saugus*, 366 Mass. 659, 660 (1975), quoting from *Selectmen of Hatfield* v. *Garvey*, 362 Mass. 821, 825 (1973). *Sancta Maria Hosp.* v. *Cambridge*, 369 Mass. 586, 591-592 (1976). The relevant findings in the present case by which we are thereby bound may be summarized as follows.

In late 1969 the parties entered into an oral agreement whereby the defendant was to be employed as an associate in the plaintiff's law offices until the end of 1970. During that period the defendant was to give up his separate law practice, and was to bring all his case files to the plaintiff's office, which, together with any new cases acquired by the defendant during the term of the agreement, were to be merged into the plaintiff's office filing system. The defendant was to devote his full time to the combined law practice and was to receive a salary of $200 a week from the

plaintiff. In addition, the plaintiff and the defendant were to share equally in the fees realized on cases brought into the office by the defendant. The plaintiff was to analyze those cases and to supervise the defendant's handling of them.

The same arrangement was renewed in 1971, subject to an agreed-upon salary increase for the defendant. During that year, however, the defendant, unbeknownst to the plaintiff, carried on a separate law practice in which he received about $4,000 in fees which he did not share with the plaintiff. In late 1971 the plaintiff expressed dissatisfaction with the amount of business generated by the defendant, the latter's frequent unexplained absences from the office and complaints received about him from clients, and it was agreed that the arrangement would terminate at the end of 1971.

The defendant left the plaintiff's office in late 1971 or early 1972, taking with him all the files on cases which he had originally brought into the plaintiff's office or which he had brought into the office after his employment there had begun. Fees had been realized on some of those cases prior to the defendant's departure, and were collected by the defendant thereafter on others. On still others no fee had been collected as of the time the master filed his report.

The master found that (at least in most instances) the defendant was justified in taking the case files with him. However, he found that the plaintiff was entitled to recover varying amounts from the defendant with respect to certain of those cases, by reason of the parties' fee-sharing agreement, disbursements made by the plaintiff, services rendered by the plaintiff or some combination thereof. The master also found the defendant liable for one-half the $4,000 received by the defendant in 1971 on account of cases he handled without the plaintiff's knowledge, and for certain sums due on other cases.[5]

---

[5] We omit the facts relating to the defendant's counterclaim (as to which the master found no liability) because the defendant does not argue the point. Town Bank & Trust Co. v. Silverman, 3 Mass. App. Ct. 28, 32 (1975).

Most of the supposed inconsistencies and inadequacies complained of by the defendant were not alluded to in any objection filed by him in the Superior Court[6] or, for all that appears in the record, otherwise brought to the attention of the trial judge.[7] That purpose was certainly not served by the objection the defendant filed to the master's general findings, as that objection was merely a catchall and insufficient to inform the court of the specific nature of the grievance or grievances underlying it.[8] Because of the complexity of the master's report,[9] the trial judge could not reasonably have been expected to ferret out sua sponte from the welter of minutiae necessarily contained in the report such supposed inadequacies, most of which involve trifling sums of money.[10] To the extent that the

---

[6] As previously indicated, the defendant filed no preliminary objections whatever. But he did file twenty-five final objections, directed at over thirty of the master's subsidiary findings, after the master's report had been submitted.

[7] This applies to the first paragraph of finding 24, and to findings 33, 35 and 38, no objections having been directed at those findings. The same is true of findings 30, 34, 39 and 40 in so far as the defendant now asserts them to be inconsistent with finding 9(i), and of findings 39, 41, 42 and 49 in so far as he now claims them to be inconsistent with finding 20, and of findings 34, 37 and 40 in so far as he now maintains them to be insufficiently detailed, as the objections he did file to those findings were based on entirely different grounds from those urged in his brief.

[8] "Defendant objects to the Master's General Findings Nos. 1, 2, 3 and 4 [being all the general findings made] and submits that they are plainly wrong, inconsistent, contradictory and vitiated in view of controlling principles of law."

[9] The master's report contains fifty numbered subsidiary findings dealing with some fifteen cases in which the parties were involved and other financial transactions between them.

[10] An exception is the defendant's contention that the master's award of $1,512 in findings 39, 41, 42 and 49, on account of fees received by the defendant during his employment by the plaintiff in four specifically identified cases handled by the plaintiff's office, duplicated the award of $2,000 in finding 20 as the plaintiff's share of fees received by the defendant in other cases which were handled secretly by him and never brought to the plaintiff's office. The contention is completely without merit, as the distinction between the two classes of cases is obvious.

defendant failed to make known his objections in the trial court, he is not entitled to do so here, and we decline to consider any such objections.[11] Compare *Sowle* v. *Empire Mut. Ins. Co.* 2 Mass. App. Ct. 824 (1974), and cases cited.

There remains but one issue raised in the defendant's brief with reference to the master's findings for our consideration on its merits. That issue arises in finding 30, concerning a case which was referred to the defendant (by another lawyer) during the term of his employment in the plaintiff's office and which was settled by the defendant on January 21, 1972, "soon after leaving the plaintiff's office." The defendant thereafter received a fee of $3,600 from the client. The plaintiff made disbursements on account of that case, entered his appearance in court, analyzed the problems it involved, conferred with the client, investigated the factual background of the case, wrote memoranda to the defendant about it and instructed the latter about its conduct. The case was "substantially completed" while the defendant was still in the plaintiff's employ. On the basis of those facts the master found the defendant liable to the plaintiff in the amount of one-half the fee plus the plaintiff's disbursements.

The defendant maintains that the master's finding of such liability is inconsistent with the following other subsidiary findings: (1) that under the parties' agreement at the time the defendant began working for the plaintiff "[o]ne-half of the fees from the cases the defendant then had or would get during this period of time would be the plaintiff's" (finding 9[d]); (2) that upon renewal of the agreement in 1971 its terms remained the same except for the defendant's salary increase (finding 17); (3) that in late 1971 the parties decided to terminate their relationship at the end of that year (finding 22); and (4) that

---

[11] The several errors in computation argued by the defendant which are shown to be such by the report would if corrected result in diminishing the plaintiff's judgment by a total of $32.14. Those errors appear in the computations in *Nesson* v. *McDevitt* ($13.63), *Alicea* v. *Alicea* ($10.63) and *Lurie* v. *Mogan* ($7.88).

"[w]ith respect to those cases obtained by the defendant while in the plaintiff's office, or referred to him, and on which a fee was generated, either through settlement or a verdict, while the defendant was still in the plaintiff's office, . . . such fee, after the payment of the referral fee and the expenses, was to be divided in equal shares" (finding 29).[12] Those findings, the defendant urges, precluded the plaintiff's recovery of any share in a fee received after the defendant's departure.

On their face the first three of the findings relied upon by the defendant as vitiating finding 30 present no inconsistency that we can see. The fourth of those findings, however — that the parties would share "a fee . . . generated, either through settlement or a verdict, while the defendant was still in the plaintiff's office" (i.e., finding 29) — can be read as inconsistent with the master's disposition of the fee involved in finding 30. It can also be regarded as inconsistent with the master's subsequent finding (numbered 32) that "the plaintiff was not entitled to one-half the fee[s] unless the cases were settled or a verdict was recovered while the defendant was still in the [plaintiff's] office, *or soon thereafter*" (emphasis supplied).[13] But to say that findings 30 and 32 *can* be read as inconsistent with finding 29 is not to say that they *must* be so treated. On the contrary, the findings are easily reconciled if finding 29 is simply regarded as an incomplete statement of the terms of the fee-sharing arrangement — incomplete in that it omits any reference to cases generating fees within a short time after the termination of the defendant's employment — and findings 30 and 32 treated

---

[12] The defendant also charges inconsistency between finding 30 and finding 28. The latter finding was worded in much the same terms as finding 29, quoted above, but dealt exclusively with cases brought by the defendant to the plaintiff's office when the employment arrangement began, and not to cases, such as the one involved in finding 30, which the defendant acquired thereafter. Thus, finding 28 is clearly irrelevant to finding 30.

[13] The defendant makes no reference to finding 32 in his argument, but cited it in his objection to finding 30 as inconsistent with that finding.

as curing the omission.[14] We think that a fair reading of the report as a whole requires that interpretation, and conclude that the inconsistency asserted by the defendant does not exist.

It follows that there was no error in the overruling of the defendant's objections, the denial of his motions to strike and recommit or the adoption of the master's report.

*Judgment affirmed.*

---

[14] In a case as factually complex as this one (see fn. 9) such oversights on the part of a master are readily understandable. A primary purpose of the requirement that preliminary objections be filed with a master in a nonjury case is to afford the master an opportunity to cure discrepancies and ambiguities in his draft report before the report is finally settled and subjected to judicial review.