D. Federico Company, Inc. *vs.* New Bedford
Redevelopment Authority.

Norfolk.   November 14, 1979. — February 6, 1980.

Present: Armstrong, Rose, & Kass, JJ.

*Contract,* For public works, Performance and breach.  *Interest.*

A construction company was not barred from recovering money allegedly
due it under a contract with a municipal redevelopment authority by
the company's failure to file a notice of dispute as the contract required,
where the authority had tacitly acknowledged the existence of the
company's claim and had made clear its intent to resist paying for the
item in question.  [142-144]

Where an estimate furnished by a municipal redevelopment authority
to a contractor failed in significant respects to conform to the require-
ments of G. L. c. 30, § 39G, for a final or semifinal estimate the in-
terest penalty provided by that section, running from the date the esti-
mate should have been tendered, was added to the undisputed amount
due the contractor.  [145-146]

At the conclusion of litigation establishing that an amount was due a
contractor under a provision of its contract with a local redevelopment
authority, this court did not impose against the authority the interest
penalty provided by G. L. c. 30, § 39G, for its failure to tender a final
or semifinal estimate pursuant to that section where, since the matter
in controversy had been identified by the parties before such an
estimate was due, tendering an estimate would have been a mere for-
mality.  [146-147]

Civil action commenced in the Superior Court on
February 24, 1977.

The case was heard by *Fine,* J., on a master's report.

*Raymond A. Letourneau (John P. Letourneau* with him)
for the defendant.

*Lewis C. Eisenberg* for the plaintiff.

Kass, J.   Decision in this case turns on whether the plain-
tiff, a construction company, was bound by its contract to

make a particular form of demand before bringing suit. Judgment was entered for the plaintiff on a master's report and, save for modifications with respect to payment of interest, we affirm that judgment.

Most of the facts are not in dispute. The defendant, the New Bedford Redevelopment Authority (NBRA), invited bids for site work in connection with an urban renewal project, largely involving construction of storm drains, sanitary sewers, water mains, curbs, sidewalks and new pavement in the streets. The bid form carried a category of work described as "Maintenance and Protection of Traffic," which appeared as line item 36 on the bid form and on subsequent job requisition forms. That item contemplated putting up appropriate wooden barricades, flashing barricades, wooden signs marked "Danger," and the assignment of traffic policemen. The plaintiff was the low bidder and entered into a construction contract on November 4, 1974, which expressly incorporated all the line items in the bid form.

We turn now to the master's subsidiary findings, which are binding upon us unless they are clearly erroneous, mutually inconsistent, contradictory or vitiated in view of the controlling law. *Michelson* v. *Aronson*, 4 Mass. App. Ct. 182, 190 (1976). *John F. Miller Co.* v. *George Fichera Constr. Corp.*, 7 Mass. App. Ct. 494, 495 (1979). The master found that the plaintiff completed the work covered by the contract in December, 1976; that it did maintain and protect traffic in the work area, a residential area in New Bedford covering four blocks; that the plaintiff had not waived payment for traffic maintenance and protection; and that the defendant has refused to pay for that work.

It is the position of the NBRA that whatever right the plaintiff may have had to payment for traffic maintenance and protection (the amount allocated to that work by line item 36 in the contract was $31,000) was lost because the plaintiff did not present the dispute to the NBRA within ten days after its commencement.[1]

---

[1] The provision in the contract about which the parties debate reads: "All disputes arising under this Contract or its interpretation . . . and all

Concerning interpretation of the contract, this court can, of course, draw its own conclusions independently of those of the master. *Peters* v. *Wallach,* 366 Mass. 622, 626 (1975). *Middlesex Neurological Associates, Inc.* v. *Cohen,* 3 Mass. App. Ct. 126, 130 (1975). *Bills* v. *Nunno,* 4 Mass. App. Ct. 279, 283 (1976). See also *Urban Transp., Inc.* v. *Mayor of Boston,* 373 Mass. 693, 694 n.1 (1977) (judge may reject master's conclusions of law); *Poskus* v. *Braemoor Nursing Home, Inc.,* 6 Mass. App. Ct. 896 (1978). Although the master found that the plaintiff, during the course of the contract, had demanded and been refused payment on account of maintenance and protection of traffic, the plaintiff made no written requisition for the line item in the contract. As requisitions proceeded, that category of work stayed in the breakdown of amounts to be paid, an implicit acknowledgement by the NBRA of the plaintiff's reservation of right to draw down construction payments on account of it. Thus, the dispute concerning payment of line item 36 did not mature until the job was finished, and the NBRA had made it abundantly clear that it was going to resist paying for traffic protection and maintenance.

At that point, it was an exercise in futility by the plaintiff to file notice of a dispute with the NBRA. "Although performance of a particular act by one party is contractually specified to be precedent to the arising of an obligation in another, the prior act need not be performed where it would be a hollow gesture sure to be disregarded by the other party." *Trustees of Boston & Maine Corp.* v. *Massa-*

---

claims for alleged breach of contract shall within ten (10) days of commencement of the dispute be presented by the Contractor to the Local Public Agency for decision. . . . Such notice need not detail the amount of the claim but shall state the facts surrounding the claim in sufficient detail to identify the claim, together with its character and scope. . . . Any claim not presented within the time limit specified within this paragraph shall be deemed to have been waived, except that if the claim is of a continuing character and notice of the claim is not given within ten days of its commencement, the claim will be considered only for a period commencing ten (10) days prior to the receipt by the Local Public Agency of notice thereof."

*chusetts Bay Transp. Authy.*, 367 Mass. 57, 61-62 n.2 (1975), and cases cited. See by analogy *Pupecki* v. *James Madison Corp.*, 376 Mass. 212, 218 (1978), which states the familiar rule that although, in order to maintain a derivative suit, a shareholder must make a demand on the directors that they cause the corporation to file the action, the requirement does not apply if it appears that demand would be futile.

At the time the plaintiff pressed its claim, the contract was still open in that the NBRA had not made a final payment on the contract or obtained a release from the plaintiff, as provided in § 108(2)(a) of the contract, relating to final payment. The NBRA cannot on the one hand hold the matter open[2] and on the other hand claim that the plaintiff acted too late. Giving a practical reading to the contract, *Clark* v. *State St. Trust Co.*, 270 Mass. 140, 153 (1930); *Fay, Spofford & Thorndike, Inc.* v. *Massachusetts Port Authy.*, 7 Mass. App. Ct. 336, 344 (1979), the plaintiff is entitled to payment for line item 36, the item for maintenance and protection of traffic.

After the master filed his report, the defendant requested a fair summary of the evidence. Rule 49(7) of the Superior Court (1974). The master made a summary of the evidence which the defendant moved to strike in part. Simultaneously, defense counsel filed an affidavit as to what he considered a fair summary of the evidence furnished by a principal witness for the plaintiff, accompanied by a motion to affirm the defendant's version of the evidence. Those motions were denied by the Superior Court judge. We have examined the affidavit of defense counsel and agree with the judge, let alone finding an abuse of discretion. Indeed, the summary of evidence furnished by defense counsel, even had it been substituted for that of the master, would not alter our view of the meaning of the disputed contract. The remaining objections made by NBRA to the master's report

---

[2] It argues, for example, that the job has not yet been approved by the city of New Bedford.

attempt to establish inconsistencies among the master's subsidiary findings, but we do not share the view that those findings are inconsistent as to facts we consider material.

Had the NBRA desired to strike maintenance and protection of traffic from the scope of the work, it should have done so at the time it entered into the construction contract. Contractors are held to strict accord with their undertakings, *Albre Marble & Tile Co.* v. *Goverman*, 353 Mass. 546, 549 (1968), and it is not too much to ask the same standard of conduct from public agencies.

This leaves us to consider the appropriate interest which should be paid on those amounts we have decided were wrongfully withheld from the plaintiff. General Laws c. 30, § 39G, as amended through St. 1972, c. 774, § 3, and applicable to contracts executed before January 1, 1976, imposes on public authorities penalty interest of three percentage points above the rediscount rate charged by the Federal Reserve Bank of Boston for construction contract payments delayed by reason of the failure of a public agency to make a final or semi-final estimate of the quantity and value of work done. The purposes of the statutory final or semi-final estimate[3] are to sort out items of dispute, e.g., extras, incomplete or imperfect work, and to expedite payment to the contractor of the undisputed items. Completion of the contract work, the master found, occurred in December, 1976. No document bearing the caption "final estimate" or "semi-final estimate" was ever made up and tendered by the NBRA to the plaintiff in accordance with the statutory mandate. The NBRA urges that its "Estimate #18" of April 4, 1977, must be viewed as the final estimate. While "Estimate #18" provides only for payment on account of the balance of the line item for preparation of site and miscellaneous work, thus having a characteristic of a closing requisition, the estimate fails significantly to conform to G. L. c. 30, § 39G, in that it announces no dispute, unfinished work, or retainages for application to satisfy de-

---

[3] An estimate is "final" if there are no disputed items; "semi-final" if there are disputed items.

mands filed by subcontractors and in that no payment of
agreed amounts accompanied "Estimate #18." Nor is there
any merit to the NBRA's argument that no final estimate
was required because the city of New Bedford had not ap-
proved the road improvements, as required by the contract.
The master, as we have noted, found the job was done, and
a public agency cannot thwart the policy of G. L. c. 30,
§ 39G, by the simple expedient of failing to obtain, or
withholding, a stamp of approval.

At the least, therefore, the penalty interest is due from
March 7, 1977,[4] to date on $10,723.09, the undisputed
amount ($6,300 on account of site and miscellaneous work
plus $4,423.09 in retainage) which NBRA owed at the junc-
ture. So as to give effect to G. L. c. 30, § 39G, it will be
necessary for the Superior Court to compute the penalty in-
terest by references to the governing Operating Letter No.
8A published by the Federal Reserve Bank of Boston from
time to time during the period running from September 19,
1978 (the date judgment was entered), to the date of entry
of judgment. after the receipt of the rescript in this action.[5]

Since it was apparent before a final or semi-final estimate
was due, that the NBRA disputed whether payment was
due on account of maintenance and protection of traffic, it
would distort the policy objectives of G. L. c. 30, § 39G
(prompt payment of undisputed amounts), to impose the
penalty interest on the NBRA for failure to identify the mat-
ter in controversy in a formally correct manner. The plain-
tiff had, after all, filed this suit against the NBRA on
February 24, 1977, thirty-nine days before the date of
"Estimate #18." As to the $31,000 due to the plaintiff for

---

[4] The sixty-sixth day after December 31, 1976, the last day on which the
work must have been completed, since the master said the contract work
was complete in December, 1976. See G. L. c. 30, § 39G.

[5] The judgment entered September 19, 1978, did not reflect changes in
the rediscount rate announced on May 12, 1978, July 3, 1978, and Au-
gust 21, 1978. Further changes were announced September 22, 1978,
October 16, 1978, November 2, 1978, July 20, 1979, August 20, 1979,
September 19, 1979, and October 10, 1979.

traffic maintenance and protection, therefore, interest shall be paid at the statutory rate applicable to contract actions from the time of demand, here the filing of the plaintiff's action, G. L. c. 231, § 6C, as amended by St. 1974, c. 224, § 2, with such additional interest on the judgment as is provided by G. L. c. 235, § 8, as amended by St. 1973, c. 1114, § 219.

The judgment shall be modified as to the interest payable, and a new judgment shall be computed and entered consistent with this opinion. As thus modified, the judgment is affirmed.

*So ordered.*